Keith C. FILMORE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 566, 2001.

Supreme Court of Delaware.

Submitted: Nov. 13, 2002.
Decided: Jan. 6, 2003.

Paul S. Swierzbinski (argued), Office of the Public Defender, Dover, for appellant.

John Williams (argued), Department of Justice, Dover, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices.

STEELE, Justice.

In October 2001, a Superior Court jury convicted Appellant Keith C. Filmore of Assault in the Third Degree and Disorderly Conduct. Before jury selection, Filmore's counsel filed a written motion requesting five special *voir dire* questions.

Question five requested that the trial judge inquire as follows:

[t]he alleged victims of this offense are White Females. The Defendant is a Black Male. Do you have any prejudice, however slight, against the Defendant which may [affect] your ability to render a fair and impartial verdict?

Question four requested that the trial judge inquire as follows:

The Defendant has no obligation to prove his innocence or even to testify[.] He has a right under the law to remain silent. If the defendant exercised his Constitutional Right to remain silent and did not testify, would this [affect] your ability to render a fair and impartial verdict? [1]

The State objected and the trial judge refused to put the questions to the jury *venire*. We reverse because the trial judge's refusal to put Filmore's question five, or one similar to it, unfairly prejudiced Filmore by failing to place the issue of prospective racial prejudice squarely before the jury as a matter of essential fairness as required by Article I, Section 7, of the Delaware Constitution and our case law.

### Facts

On the evening of November 21, 2000, Filmore entered a convenience store in Cheswold, Delaware. Filmore asked the store manager if he could use the store telephone. The manager directed Filmore to the pay phone located outside the store. The manager testified that Filmore began entering and leaving the store and asking customers for a ride. When Filmore started to cause a serious disruption and used foul language, the manager telephoned the Delaware State Police and requested assistance with a disorderly customer.

Filmore informed the manager that he wanted to find the bus station and asked the manager to find a telephone number for the bus station. The manager asked Filmore what bus station he wanted, but Filmore did not seem to know and according to the manager:

He picked up the phone book and he said, "Eat this mother fucker," and that's when he picked it up, pulled his arm back, and just wailed it at me and hit me right up here on the side of my face. It happened so fast, I didn't have time to move.[2]

After throwing the telephone book which struck the manager, Filmore ran out of the store. Two Delaware State Police officers responded to the manager's complaint and testified that the manager had a red mark on her face. The police officers later apprehended and arrested Filmore.

### Jury *Voir Dire* /Racial Prejudice

 Pursuant to provisions of Del.Super. Ct. Cr. R. 24(a), Filmore's counsel filed a written motion for five special *voir dire* questions. Before jury selection on the first day of trial, the trial judge conducted a hearing to consider the motion. The State objected to question number five on the basis that the question was covered by a standard bias inquiry. Filmore's proposed question five read as follows: "[t]he alleged victims of this offense are White Females. The Defendant is a Black Male. Do you have any prejudice, however slight, against the Defendant which may [affect] your ability to render a fair and impartial verdict?"

In response to the State's objection to the proposed *voir dire* question, the trial judge stated: "[t]he standard question is

---

**1.** Appendix to Appellant's Op. Br. at 9.

**2.** Appendix to Appellant's Op. Br. at 33–35.

do you have any bias or prejudice for or against the State or the defendant?" The trial prosecutor argued against the inclusion of Filmore's proposed question five as follows:

> The State would ask that the question not be asked. They're already asked if, for any reason, they cannot be fair, and it's going to be obvious to the jury that the defendant is a black male.
>
> Injecting—making race an issue by means of this question, the State submits, is not fair. It's not relevant. Nobody is going to make race an issue in this trial. The State is not. Hopefully, the defense will not, although this question seems to be an attempt to do that. I mean, one would hope that the jury is going to be color blind in the sense that they're not going to focus on the race of the witnesses or the race of the defendant, they're not going to let that affect their thinking, and certainly the State would hope that that's the case and we're not going to try inject that as an issue.
>
> So, why this has to be brought up, I really don't have any idea, but they're going to be asked whether there's any reason they would be partial to one side or the other and I think this makes—it sort of tries to create a racial issue where there is none.[3]

In response to the State's opposition, Filmore's trial counsel argued:

> Your Honor, the reason why it's important is because the case law says that where this is, in fact, the circumstance, it is proper. It is based on the Fourteenth Amendment. The Fourteenth Amendment was passed 125 or some-odd years ago basically to benefit individuals of the black race that they would not be discriminated against, and because of that, this question basically has been accepted for years and years. It is the proper way to be done.
>
> I would also like to assume that individuals are not prejudiced, but I'm also old enough to know that things don't always turn out the way they should in theory.
>
> If someone has a particular problem with this defendant for some reason and if they come forward and tell the Court, they should be excused, but it's an appropriate question, [ ] is a question which is routinely asked, and we'd ask the Court to give it.[4]

The State further replied:

> Your Honor, I have not seen it routinely asked and I'd ask Mr. Swierzbinski to cite the case law he's referring to because I'm not familiar with it. It may be something that I just don't know, which is certainly possible, but I'm not familiar with it.[5]

After hearing further comments from the trial prosecutor, the trial judge denied the request and stated: "I don't recall ever giving this instruction. I don't see a need for it at the present time for the reasons that I think [the State] has stated on the record, so I'm not going to give it."[6]

Filmore alleges the trial judge committed reversible error when he denied Filmore's proposed *voir dire* question concerning racial bias. Specifically, Filmore alleges the trial judge's failure to question prospective jurors on racial prejudice violated his rights under the federal Constitution and the Constitution of this State.

---

3. Appendix to Appellant's Op. Br. at 19–20.

4. *Id.* at 20.

5. *Id.* at 21.

6. *Id.*

 We review claims of constitutional violations *de novo*.[7] With respect to any inquiry into possible racial prejudice, "the trial judge retains discretion as to the form and number of questions on the subject."[8]

 The United States Supreme Court has held that the United States Constitution does not require a question about juror racial bias unless there are "special circumstances" in the case.[9] Special circumstances exist if racial issues are "inextricably bound up with the conduct of the trial."[10] The Court, nevertheless, set forth a more stringent rule for federal trial courts. The *Ristaino* holding is not an interpretation of the United States Constitution (and therefore neither binding on state courts nor a limitation on state courts' policy to employ more stringent cautions to explore and rule out racial bias), but stems from the Court's supervisory capacity over the federal courts.[11] In the federal system when racial issues are "inextricably bound up with the conduct of the trial," a *voir dire* question is *mandatory* "when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups."[12] In *Feddiman v. State*, this Court discussed the foregoing precedent and held "[t]he same higher standard is applicable in the courts of this State by virtue of Article I, Section 7 of the Delaware Constitution."[13]

A jury convicted Feddiman of knocking a victim off of her bicycle, and taking her away in his automobile to two separate locations. During the course of transporting the victim, and at each location, Feddiman forced the victim to engage in various acts of sexual intercourse.[14] Feddiman's defense counsel submitted a written request for the trial judge to ask a *voir dire* question concerning possible racial prejudice. The question submitted by defense counsel and later asked by the trial judge was:

> The victim in this case is a white person. The defendant is black. Do you have any prejudice, however slight, against black people which would [a]ffect you in any[ ]way in deciding this case regarding their sexual proclivities?[15]

 In *Feddiman*, we held that Article I, Section 7 of the Delaware Constitution required the trial judge to question prospective jurors about racial prejudice and that the above question met that requirement.[16] If for some reason our holding in *Feddiman* seems unclear, we an-

---

7. *Baxter v. State*, 2002 WL 27435, *1, 2002 Del. LEXIS 1, at *2.

8. *Feddiman v. State*, 558 A.2d 278, 283 (1989)(quoting *Riley v. State*, 496 A.2d 997, 1007 (Del.1985)).

9. *Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976).

10. *Id.* at 597, 96 S.Ct. 1017.

11. *Rosales–Lopez v. United States*, 451 U.S. 182, 190–91, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).

12. *Id.* at 192, 101 S.Ct. 1629.

13. 558 A.2d 278, 282–83 (Del.1989).

14. *Id.* at 279.

15. *Id.* at 282.

16. *Feddiman*, 558 A.2d at 283. We also noted, however, that "subject to the essential demands of fairness, the trial court has broad discretion in determining the scope and form of question to be asked on *voir dire*." *Id.* Thus, the trial judge need not adopt verbatim the question submitted by the defense counsel. Once the trial judge determines an inquiry of racial bias is necessary, the trial judge need only inquire to a degree necessary to ensure the defendant is afforded all of the rights he is entitled to under the federal Constitution and the Constitution of this State.

nounce the following bright line rule: Our view that Article I Section 7 of the Delaware Constitution calls for the "essential demands of fairness" requires that the trial judge question prospective jurors about racial prejudice when: (1) the defendant stands accused of a violent crime; (2) the defendant and victim are members of different racial groups; and (3) the defense attorney specifically requests the trial court to question the jurors during *voir dire* concerning potential racial prejudice.

 This case, like *Feddiman,* involves an accusation of violent crime, an African–American defendant, a Caucasian victim, and a specific request by defense counsel for the trial court to question the jurors during *voir dire* concerning the possibility of racial prejudice. In fact, the very question proposed by Filmore's defense counsel parallels the question asked in *Feddiman.* Our jurisprudence mandates strict adherence to the more sensitive approach for ferreting out racial prejudice set forth in *Feddiman* and reiterated in our holding today. The trial judge should have followed *Feddiman* and the now well established practice in our courts to ask the *venire* a question on *voir dire* directly addressing the issue of possible racial prejudice. Race was injected into this case by its factual circumstances and not, as the State argued, by a sensitive question during *voir dire* seeking to expose bigotry. A broad antiseptic question seeking to explore "bias for or against the defendant or the state" as an institutional entity falls woefully short of a fair and adequate inquiry into the onerous potential taint of racial bigotry present in every case where an alleged victim of a violent crime is a member of another race than that of the accused. Accordingly, the trial judge erred

by not making a fair inquiry into the potential of racial prejudice among the prospective jurors consistent with the "demands of essential fairness" mandated by our Constitution.[17]

### Jury *Voir Dire* /Defendant's Right Not To Testify

 Filmore's fourth special *voir dire* question stated:

> The Defendant has no obligation to prove his innocence or even to testify[.] He has a right under the law to remain silent. If the defendant exercised his Constitutional Right to remain silent and did not testify, would this [affect] your ability to render a fair and impartial verdict?[18]

During the discussion of the proposed *voir dire* question on the first day of trial before the selection of the jury, the State objected and stated:

> Number 4, I do object to that. I don't know why the jury has to be brought to that issue at this stage. Basically, I don't think this is designed to ferret out bias. I think it's designed to start sending messages to the jury that, you know, just because his client doesn't testify doesn't mean they should convict him, and that's not the purpose of *voir dire.* The purpose of *voir dire* is to find out if there's any bias.
>
> They are going to be told just because he doesn't testify doesn't mean that they can make any adverse inference, and they're going to be told that in the closing instructions. I'm sure Mr. Swierzbinski is going to tell them that in his opening and his closing and nobody's going to contradict that. I'm not going to say a word about it because I can't.[19]

---

**17.** *Id.*

**18.** Appendix to Appellant's Op. Br. at 9.

**19.** *Id.* at 14–15.

After hearing argument from defense counsel on the proposed *voir dire* question, the trial judge denied the request:

> As you know, I formally give preliminary instructions to the panel. In the panel, I do repeatedly make mention, if you recall from previous trials that I've given, the fact that the defendant is presumed innocent, and I will ask a follow-up question as a result of my preliminary instructions to make sure that all members of the panel understand and will follow the preliminary instructions given by the Court.
>
> So, I will deny the use of this particular question.[20]

Filmore argues that the trial judge abused his discretion when he denied to ask special *voir dire* question number four.

We addressed this issue in *Jacobs v. State.*[21] There, the defense counsel proposed the following question: "If the defendant does not testify, will you follow my instruction that you may draw no inference from his failure to take the witness stand?" We held that the trial judge did not abuse his discretion when he neglected to give this and other requested special *voir dire* questions and stated:

> The sole purpose of *voir dire* examination in this State is to enable the judge to determine whether a prospective juror is qualified and able to render an impartial verdict upon the evidence and the law.... This is particularly true as to questions which tend to argue the case in advance or which are designed to indoctrinate the jury or ascertain the advance reaction of its members to particular issues involved in the trial.
>
> We are of the opinion that the foregoing questions fall within the prohibition of being irrelevant and in excess of the purpose of *voir dire* examination, and as a consequence we find no abuse of discretion on the part of the Trial Judge in refusing to ask them.[22]

*Jacobs* is a correct statement of the law in this regard and the decision controls in this case. The subject was otherwise covered in the final jury instructions and there is no reason to believe that the jury did not follow the trial judge's instructions. Filmore has failed to establish an abuse of discretion based upon his argument that the trial judge conducted an inadequate *voir dire* into the subject of possible bias resulting from Filmore's potential decision not to testify.

### Conclusion

The judgment of the Superior Court is REVERSED.

---

**20.** *Id.* at 17–18

**21.** 358 A.2d 725, 727–28 (Del.1976).

**22.** *Id.* at 728.