Nicole M. FRANCO, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 288, 2006.

Supreme Court of Delaware.

Submitted: Jan. 10, 2007.
Decided: Feb. 21, 2007.

Joseph A. Hurley, Wilmington, DE, for Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

JACOBS, Justice:

Nicole Franco ("Franco"), the defendant-below, appeals from a Superior Court restitution order. She claims that by precluding her defense counsel from impeaching the State's witness on cross examination, the Superior Court reversibly erred in two respects. Specifically, Franco contends that the trial court violated Franco's confrontation rights under the Sixth Amendment and under the Due Process clause of the Fourteenth Amendment. We find no merit to these claims and affirm.

## FACTS

In 2005, Franco, together with three codefendants, was arrested on charges of

first degree robbery and second degree conspiracy. Franco pled guilty to reduced charges of misdemeanor theft and third degree conspiracy. She was sentenced to a term of probation and ordered to make restitution to the victim, Russell Pyle ("Pyle"). Because the amount of restitution remained in dispute, the Superior Court held a restitution hearing. At that hearing, Pyle—who was the victim and the only witness—testified that his losses included a pair of sneakers (which he valued at $30), a cell phone (which cost $191.28 to replace), and $200 in cash.

During the restitution hearing, defense counsel attempted to impeach Pyle's credibility on cross-examination by asking Pyle the purpose of a meeting he had with Franco on the day of the incident. The trial judge *sua sponte* asked counsel to explain the relevance of that question. Defense counsel responded by proffering that "[Pyle and Franco] were smoking marijuana. That's why they went there, to smoke marijuana." The trial judge declined to permit questions on that subject, and directed counsel to "[g]o on to something else. Your client pled guilty to these charges, I am not interested in some of this other stuff." [1]

During cross-examination, defense counsel also sought to show Pyle's bias by asking Pyle if he had telephoned Franco after the incident, in order to threaten her. The trial judge again interrupted to ask counsel to explain the relevance of this question to the restitution issue. Ultimately, the trial judge refused to permit defense counsel to continue cross-examining Pyle about his phone call to Franco,

noting that "[p]erhaps that [cross-examination] should have been thought of before there was a guilty plea in this case. I think we're past this...." [2]

Ultimately, the trial judge disallowed restitution for the sneakers, finding their value too speculative and uncertain. The trial court did, however, order full restitution for the cell phone and cash, for a total of $391.28. Franco appeals from that restitution order.

## *ANALYSIS*

■ This Court reviews claims of constitutional violation *de novo*. [3]

### I.

■ The first issue is whether the Superior Court deprived Franco of her Sixth Amendment right of confrontation by refusing to permit her defense counsel to impeach and cross-examine the State's only witness on the two subjects described above. Franco claims that she was denied her Sixth Amendment confrontation right because the trial court precluded her from raising credibility issues to show Pyle's bias, as evidenced by (1) Pyle's use of drugs at the time of the offense; and (2) Pyle making a threatening telephone call to Franco after the offense.

The State responds that because a restitution hearing is not a trial, strict adherence to the rules of evidence and to the Sixth Amendment is not required. The State contends that because this Court has held that the Sixth Amendment does not apply to violation of probation ("VOP") hearings [4]—where the stakes are higher than at restitution hearings—the Sixth

---

1. This first ruling is referred to in this Opinion as the "Marijuana Ruling."

2. The trial judge's second ruling is referred to as the "Threatening Call Ruling."

3. *Filmore v. State*, 813 A.2d 1112, 1116 (Del. 2003).

4. *Jenkins v. State*, 2004 WL 2743556, at *1–3, 2004 Del. Lexis 549, at *5–10 (Del. Nov. 23, 2004) (holding that, because the violation of probation (VOP) hearing was neither a criminal prosecution nor a formal trial, the Sixth Amendment does not apply).

Amendment right of confrontation should not apply in restitution hearings, where the stakes are lower.

■ Both the United States and the Delaware Constitutions guarantee an accused the right to confront the witnesses against him in all criminal prosecutions.[5] The United States Constitution provides that "in all *criminal prosecutions,* the accused shall enjoy the right ... to be confronted with the witnesses against him...."[6] The Delaware Constitution provides that "in all *criminal prosecutions,* the accused hath a right ... to meet the witnesses in their examination face to face...."[7] The question of whether a defendant has a Sixth Amendment right of confrontation at a hearing to determine the appropriate amount of restitution has not yet been addressed by this Court.

The restitution hearing in this case occurred as part of the sentencing process. Four federal courts and two state courts have held that "the defendant does not have a Sixth Amendment right of confrontation at the sentencing stage of a criminal prosecution."[8] Those authorities hold that the procedural protections afforded a convicted defendant at sentencing are less

stringent than the protections afforded a presumptively innocent defendant at a trial on the issue of guilt. We agree with that reasoning, and conclude that the Sixth Amendment right of confrontation does not apply in restitution hearings. Accordingly, we reject Franco's first claim of error.

## II.

The second issue is whether the Superior Court violated Franco's Due Process rights by denying her defense counsel the opportunity to impeach and cross-examine the State's witness on the two matters discussed above. Franco claims that apart from the Sixth Amendment, she had the right to confront and cross-examine witnesses under the Due Process clause of the Fourteenth Amendment.[9] Relying on *Snowden v. State,*[10] Franco urges that the Superior Court violated her Due Process rights by precluding cross-examination of Pyle to show his possible bias.

Franco claims that the Superior Court should have undertaken the analysis mandated by *Snowden v. State* to determine if the trial judge's cross-examination rulings violated the defendant's confrontation

---

**5.** *McGriff v. State,* 672 A.2d 1027, 1030 (Del. 1996).

**6.** U.S. Const. amend. VI (emphasis added).

**7.** Del. Const. art. I, § 7 (emphasis added).

**8.** *People v. Cain,* 82 Cal.App.4th 81, 86, 97 Cal.Rptr.2d 836 (Cal.Ct.App.2000); *see also United States v. Kirby,* 418 F.3d 621, 627–28 (6th Cir.2005) (holding that "Confrontation Clause protections do not extend to sentencing hearings"); *United States v. Petty,* 982 F.2d 1365, 1368 (9th Cir.1993) (holding the Confrontation Clause of the United States Constitution does not apply at sentencing under the U.S. Sentencing Guidelines Manual and "[t]he procedural protections afforded a convicted defendant at sentencing are traditionally less stringent than the protections afforded a presumptively innocent defendant at trial") *quoting United States v. Kikumura,* 918

F.2d 1084, 1102–03 (3d Cir.1990); *State v. McGill,* 213 Ariz. 147, 140 P.3d 930 (2006) (holding that the Confrontation Clause applies only to trials and not to sentencing hearings); *United States v. Rondeau,* 430 F.3d 44, 47 (1st Cir.2005) (finding "[g]iven that the Confrontation Clause focuses on 'criminal prosecutions,' we have not found the Clause to be applicable to post-conviction proceedings"); and *United States v. Cabbagestalk,* 184 F. App'x. 191, 195 (3d Cir. June 9, 2006) (declaring that "the Sixth Amendment's confrontation clause does not apply to sentencing hearings").

**9.** *Playtex Prod., Inc. v. Evans,* 2006 WL 2242751, at *6 (Del.Super. June 30, 2006).

**10.** 672 A.2d 1017 (Del.1996).

right. In *Snowden* we recognized that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [11] In *Snowden*, however, the cross-examination occurred during the guilt phase of a criminal jury trial, whereas in this case, the restitution hearing was part of the sentencing process. Therefore, *Snowden* does not squarely control the issue presented here, which is one of first impression in this State.

██ In assessing the merits of Franco's Due Process claim, we start with the undisputed premise that Due Process protections apply in restitution hearings. The question is the proper reach or extent of those protections in that context. Addressing that issue, the California Court of Appeals has held that:

> The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: "A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed ..., and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing." [12]

██ The Due Process clauses of the United States and the Delaware Constitutions require that the defendant receive notice and be afforded the opportunity to be heard and to cross-examine witnesses in criminal proceedings. Because the restitution hearing is not a part of the "guilt" phase of a criminal prosecution, but is a part of the sentencing process, the trial court has broad discretion to determine the scope of the defendant's Due Process right of confrontation. In restitution hearings, a defendant's constitutional right to Due Process is violated only where the trial court refuses to permit cross-examination that is relevant to determining the proper amount of restitution.

██ In this case, the trial judge made two challenged evidentiary rulings: the "Marijuana Ruling" and the "Threatening Call Ruling." Those rulings precluded defense counsel from (1) impeaching Pyle's credibility by inquiring into his use of marijuana at the time of offense; and (2) showing Pyle's bias by asking if Pyle had made a threatening phone call to Franco after the theft. Responding to the trial court's "Marijuana Ruling," defense counsel argued that "[by asking Pyle the purpose of the meeting], the point is to show that somebody who was under the influence of marijuana might affect their credibility and reliability in giving testimony."

---

11. *Snowden v. State*, 672 A.2d 1017, 1025 (Del.1996), *citing Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). This Court articulated four factors to guide the trial court in the exercise of its discretion and held "[t]he trial judge should consider (1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question of bias; (3) the danger of unfair prejudice, confusion of issues, and undue delay; and (4) whether the evidence of bias is cumulative." *Snowden*, 672 A.2d at 1025, *citing Weber v. State*, 457 A.2d 674, 681 (1983).

12. *People v. Cain*, 82 Cal.App.4th 81, 86, 97 Cal.Rptr.2d 836 (Cal.Ct.App.2000), citing *People v. Resendez*, 12 Cal.App.4th 98, 113, 15 Cal.Rptr.2d 575 (Cal.Ct.App.1993). The test in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) for deciding what process is "due," requires the court to consider three factors: (1) the nature of the private interest affected; (2) the government's interest, including the administrative and fiscal burdens that various procedures would entail; and (3) the risk of error associated with each conceivable procedural alternative. *Mathews v. Eldridge*, 424 U.S. at 334–35, 96 S.Ct. 893.

But, there was no evidence that Pyle was or appeared to be under the influence of marijuana, either at the time of the offense or while testifying about the extent of his losses. Because Pyle's use of marijuana was irrelevant to the sole issue, which was the appropriate amount of restitution, Franco has failed to show that the Superior Court's Marijuana Ruling was erroneous.

The "Threatening Call Ruling," however, is of a different character. The question is whether evidence that Pyle made a threatening call to Franco after the criminal offense was relevant to show that Pyle was motivated to exaggerate the amount of the losses he sustained as the result of the theft. We conclude that such evidence, offered for that purpose, would have been relevant to show bias. Therefore, Franco was entitled, as a matter of Due Process, to explore Pyle's potential bias, as evidenced by Pyle having made a threatening call to Franco after the criminal incident. By precluding that inquiry, the Superior Court erred.

We conclude, nonetheless, that although the trial court erred, the error was harmless. "Violations of the minimal due process right to confrontation are sub-ject to harmless error analysis." [13] Franco is not entitled to a reversal of the restitution order unless she can establish that the error "had substantial and injurious effect or influence in determining" [14] the amount of the restitution. She has not done so.

A violation of the confrontation clause of the Sixth Amendment, made applicable to state trials through the Due Process clause of the Fourteenth Amendment, "does not require the setting aside of the state conviction if the evidence of guilt is so overwhelming as to make the error harmless beyond a reasonable doubt." [15] Applying this standard to a restitution hearing, an error is harmless if the evidence that is properly admitted leaves no room for the judge to entertain a reasonable doubt as to the proper amount of restitution. Another formulation of the test is whether the restitution award would have been any different had defense counsel been allowed to demonstrate Pyle's bias. Here, the answer is no.

In this case, Pyle provided credible evidence of the amount of his losses, and the trial judge gave a reasonable explanation of how he arrived at the adjudicated dollar amount. Specifically, Pyle provided a receipt for his replaced cell phone,[16] and a

---

13. *State v. Lewis*, 2005 Wash.App. Lexis 1354, at *5 (Wash. Ct.App. June 13, 2005). *See also, United States v. Lomeli–Gonzalez*, 1996 U.S.App. Lexis 16658, at *4 (9th Cir. June 7, 1996) (holding that "[d]ue process violations at a revocation hearing are subject to harmless error analysis" *citing United States v. Frazier*, 26 F.3d 110, 114 (11th Cir.1994)).

14. *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

15. *Loftis v. Beto*, 450 F.2d 599, 601 (5th Cir. 1971).

16. In relevant part, the record of the plea proceeding provides as follows:

[The prosecutor]: How much did it cost you to replace your phone?
[Pyle]: About $200.
[The prosecutor]: Did you provide a receipt to our office?
[Pyle]: Yes.
[The prosecutor]: Your Honor, I'm just going to hand up a copy of the receipt to put into evidence.
[The Court]: Is that one of the documents I have here?
[The prosecutor]: Yes, it is, Your Honor.
[The Court]: Okay.
[The Clerk]: So marked State's Exhibit 1, Your Honor.
App. to Appellant's Opening Br. at 5.

reasonable (and plausible) explanation for having $200 cash on his person at the time of incident.[17] Moreover, the trial judge exercised discretion by declining to award the $30 claimed cost of the sneakers as too speculative and uncertain. Although it was error for the trial court to preclude defense counsel from inquiring into Pyle's possible bias, that error did not have a "substantial and injurious" effect on the issue of the appropriate amount of restitution. Accordingly, the error was harmless.

### CONCLUSION

For the foregoing reasons, the Superior Court's restitution judgment is affirmed.

17. When asked by the prosecutor why he had cash in the amount of $200 at the time of incident, Pyle testified that: "I just got my paycheck handed to me and I was going down to get a new car, because my car was in bad shape, and my sister works at a new car dealership and so I thought with $200, I could get, you know—and under the table a little bit with her and her discount, I'd put something down on a car." App. to Appellant's Opening Br. at 6.