IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                            )
     v.                    )    I.D. No. 1905019003
                            )
KENNETH THOMAS,      )
                            )
     Defendant.        )

Submitted:  January 28, 2021
Decided:  March 19, 2021

## <u>ORDER</u>

### *Upon Defendant's Motion to Continue Sentencing*
### GRANTED

This matter is before the Court on the Motion to Continue Sentencing of Defendant Kenneth Thomas (hereinafter "Mr. Thomas").  Mr. Thomas's sentencing hearing was previously scheduled to be held virtually, as Mr. Thomas was unable to be transported to the courthouse due to the ongoing pandemic.  Mr. Thomas's Motion seeks to continue his sentencing "until such time that it can be conducted safely in person."  The State of Delaware (hereinafter "the State") opposes the Motion.  Having considered the written submissions of the parties, the Court finds that the Motion should be **GRANTED** for the reasons that follow:

### FACTUAL AND PROCEDURAL BACKGROUND

1.  As a result of the COVID-19 pandemic, courts in the State of Delaware are operating under Administrative Order No. 17 of the Chief Justice of the Delaware Supreme Court, which is part of a series of administrative orders (hereinafter referred to collectively as  "the Emergency Order") that extended the Chief Justice's

March 13, 2020, Order Declaring a Judicial Emergency.[1] The Emergency Order authorizes this Court to use audiovisual devices to conduct proceedings (except for jury trials) for the duration of the order.[2]

2. Defendant Kenneth Thomas's sentencing was scheduled to be held virtually by audiovisual means on January 19, 2021, after multiple continuances of his in-person sentencing necessitated by the COVID-19 pandemic. On January 14, 2021, Mr. Thomas's counsel represented during an office conference that Mr. Thomas believes he has the right to attend his sentencing in person. Subsequently, his counsel filed a motion in support of his position, and the State filed a response. The sentencing was once again continued pending the Court's decision on Mr. Thomas's motion.

3. In a previous case before this Court, following a jury trial in October 1997, Mr. Thomas was sentenced on February 6, 1998, with credit time back to July 8, 1996, to 25 years at Level V for one count of Attempted Unlawful Sexual Intercourse in the First Degree, 20 years at Level V for a second count of Attempted Unlawful Sexual Intercourse in the First Degree, and 2 years at Level V, suspended for 24 months at Level III, for each of two counts of Unlawful Sexual Contact in the

---

[1] *See* Admin. Ord. No. 17, Extension of Jud. Emergency (Del. Mar. 3, 2021); *see also* Admin. Ord. No. 16, Extension of Jud. Emergency (Del. Jan. 28, 2021); Admin. Ord. No. 15, Extension of Jud. Emergency (Del. Dec. 30, 2020); Admin. Ord. No. 14, Extension of Jud. Emergency (Del. Dec. 2, 2020); Admin. Ord. No. 12, Extension of Jud. Emergency (Nov. 2, 2020); Admin. Ord. No. 11, Extension of Jud. Emergency (Oct. 2, 2020); Admin. Ord. No. 10, Extension of Jud. Emergency (Sept. 4, 2020); Admin. Ord. No. 9, Extension of Jud. Emergency (Aug. 5, 2020); Admin. Ord. No. 8, Extension of Jud. Emergency (July 6, 2020); Admin. Ord. No. 7, Extension of Jud. Emergency (June 5, 2020); Admin. Ord. No. 6, Extension of Jud. Emergency (May 14, 2020); Admin. Ord. No. 4, Extension of Jud. Emergency (Apr. 14, 2020); Ord. Declaring a Jud. Emergency (Mar. 13, 2020).

[2] *E.g.*, Admin. Ord. No. 17, at 3 ¶ 3 ("[C]ourts in the State are authorized . . . to continue to utilize audiovisual devices at their facilities and remotely to conduct proceedings (except for jury trials) for the duration of this order.")

Second Degree. All sentences imposed were ordered to be served consecutively, including the two Level V sentences (*i.e.*, for a total of 45 years of Level V time).

4. In January 2019, Mr. Thomas was transferred temporarily to a correctional facility in Pennsylvania. As a new inmate, Mr. Thomas was required to participate in an intake interview with a psychologist. During the interview, Mr. Thomas confessed to multiple illegal sexual acts distinct from the acts for which he had been tried and convicted in 1997. An investigation indicated that Mr. Thomas had committed additional sexual acts against the sister of the earlier crime victim, beginning when the sister was three or four and ending when she was seven. For those acts, the State charged Mr. Thomas with four counts of Unlawful Sexual Contact in the Second Degree and one count of Continuous Sexual Abuse of a Child.

5. Mr. Thomas waived his right to a jury trial, and on February 3, 2020, a bench trial was held. At the conclusion of the trial, the Court found Mr. Thomas not guilty as to the single count of Continuous Sexual Abuse of a Child but guilty as to all four counts of Unlawful Sexual Contact in the Second Degree.

## STANDARD OF REVIEW

6. This Court enjoys wide discretion to grant or deny continuance requests,[3] including in the context of sentencing.[4] When deciding a continuance request, "trial judges must consider all relevant circumstances."[5] The party seeking a continuance has the burden of establishing a clear record of the length of the continuance requested and the reasons why the court should grant the continuance.[6]

---

[3] *Norwood v. Roxana Volunteer Fire Co.*, 2019 WL 4267416, at *2 (Del. Super. Sept. 9, 2019) (citing *Secrest v. State*, 679 A.2d 58, 64 (Del. 1996)).

[4] *See, e.g., Trawick v. State*, 845 A.2d 505, 508 (Del. 2004) (finding that Superior Court had reasonably and properly exercised its discretion to continue sentencing to allow State to clarify ambiguity in the record); *Goode v. State*, 136 A.3d 303, 315 (Del. 2016) (finding that granting continuance of sentencing was left to discretion of trial judge).

[5] *Waltman v. State*, 840 A.2d 642 (TABLE), 2003 WL 23104199, at *2 (Del. 2003).

[6] *Roache v. Charney*, 38 A.3d 281, 287 (Del.), *as corrected* (Feb. 28, 2012).

"The Court should grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecution or defense, but also the public interest in prompt disposition of the case."[7]

## THE PARTIES' CONTENTIONS

7.    In arguing that he has the right to attend his sentencing at the courthouse, Mr. Thomas contends that Rule 43 of this Court's Rules of Criminal Procedure requires a defendant's physical presence at sentencing and that the Emergency Order did not validly override that requirement.  In the alternative, Mr. Thomas argues that even if the Emergency Order did override Rule 43's physical presence requirement, the proposed virtual hearing violates the Confrontation and Due Process Clauses of the United States Constitution.  Furthermore, he asserts that a virtual hearing would violate his constitutional right to counsel.  Mr. Thomas also argues that Delaware precedent requires that he be physically present in the courtroom for sentencing.

8.    The State contends that, because sentencing is a non-guilt proceeding (i.e., a proceeding where the defendant's guilt is not in question), the Due Process Clause does not apply.  The State likewise contends that the Confrontation Clause does not apply at sentencing proceedings.  The State also argues that Mr. Thomas's right to counsel would not be violated by a virtual sentencing because he would be present via real-time audiovisual technology that would allow him to enter a breakout room to consult confidentially with his attorney.  Finally, the State contends that, to the extent that Mr. Thomas is required to be physically present in the courthouse under Rule 43, the Emergency Order temporarily overrides that requirement.

---

[7] *Powell v. State*, 332 A.2d 776, 779 (Del. 1975) (quoting American Bar Association Standards Relating to Speedy Trial, Approved Draft, 1968).

## DISCUSSION

**A. The physical presence requirement under Rule 43.**

9. Rule 43 requires that a criminal defendant be physically present at certain stages of his or her case, including at the imposition of his or her sentence.[8] However, this Court has previously held in *State v. Kolaco* that Rule 43's requirement of physical presence has been temporarily abrogated, other than at jury trials, by the Emergency Order pursuant to the authority vested in the Chief Justice by the Judicial Emergency Act (hereinafter "the Act").[9]

10. *Kolaco* involved a requested continuance of a hearing on a motion to suppress.[10] The defendant in *Kolaco* argued that the Act violated separation of powers principles and that the trial court must make certain case-specific findings before it may hold a virtual hearing.[11]

11. Here, Mr. Thomas does not challenge the authority of the trial court to determine whether audiovisual technology may be used for proceedings, but instead contends that the Emergency Order itself fails to state the specific proceedings for which audiovisual devices may be used as required by the Act. Mr. Thomas also argues that the Chief Justice failed to provide a compelling state interest for authorizing the use of audiovisual technology in sentencing proceedings, also in contravention of the Act. If either of Mr. Thomas's arguments is correct, the Emergency Order would be deemed invalid as to the provisions regarding the use of audiovisual devices for this proceeding, and Rule 43 would control: this Court could not then require that Mr. Thomas be sentenced virtually. In other words, if Mr. Thomas is correct that the Emergency Order is invalid, this Court may not exercise

---

[8] *State v. Kolaco*, 2020 WL 7334176, at *5 (Del. Super. Dec. 14, 2020). The other proceedings where the defendant must be physically present are a guilty plea and all stages of a trial. *Id.*

[9] *Id.* at *10; *see also* 10 *Del. C.* §§ 2001-2010 (codification of the Act).

[10] *Kolaco*, 2020 WL 7334176, at *1.

[11] *Id.* at *11. The parties in *Kolaco* also raised certain constitutional arguments that the Court does not address here.

its discretion to determine whether his request for a continuance should be granted, and instead the Court must continue Mr. Thomas's sentencing until inmates can be transported and Mr. Thomas can be physically present for his sentencing. Therefore, before this Court may exercise its discretion in considering Mr. Thomas's continuance request, it must first determine whether the Emergency Order is valid.

**B.     The validity of the Chief Justice's Emergency Order.**

**1. The Emergency Order adequately states the specific proceedings for which audiovisual devices shall be permitted.**

12.     The COVID-19 pandemic provided the Chief Justice the basis for exercising the powers designated to him under the Act.[12] The Act provides that when the Chief Justice declares a judicial emergency, the "Chief Justice shall state . . . the specific proceedings for which audiovisual devices shall be permitted . . . ."[13] Mr. Thomas contends that the Emergency Order did not list the specific proceedings for which such devices are permitted and is therefore invalid.

13.     The Emergency Order provides, in relevant part, as follows:

> In light of the continuing threat COVID-19 poses to public health, all courts in the State are authorized, to the greatest extent possible under 10 Del. C. § 2008, to continue to utilize audiovisual devices at their facilities and remotely to conduct proceedings (except for jury trials) for the duration of this order.[14]

The foregoing section of the Emergency Order denotes proceedings where courts are permitted to use audiovisual devices by explicitly excluding those proceedings for which audiovisual devices are *not* permitted (i.e., for civil and criminal jury trials). By excluding jury trials from the proceedings for which audiovisual devices

---

[12] *See* 10 *Del. C.* § 2004(a) (giving the Chief Justice the authority to declare a judicial emergency when there are "emergency circumstances, including . . . disease . . .").

[13] 10 *Del. C.* § 2008.

[14] Admin. Ord. No. 17, at 3 ¶ 3. The wording of the Chief Justice's initial March 13, 2020, Order, was slightly different, but substantively the same: "To the greatest extent possible, all trial courts in the State are authorized and encouraged to utilize audiovisual devices to conduct proceedings (except for jury trials)." Ord. Declaring a Jud. Emergency, at 3 ¶ 3.

6

are permitted, the Emergency Order effectively and clearly identifies the "specific proceedings for which audiovisual devices shall be permitted"—*i.e.*, all other court proceedings.

14.     The Delaware Supreme Court has stated that if uncertainty exists as to the language of a statute, "the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."[15]     The "'golden rule' of statutory construction provides that the unreasonableness of the result produced by one among alternative interpretations of a statute is just cause for rejecting that interpretation in favor of the interpretation that would produce a reasonable result."[16]  Thus, even assuming *arguendo* that there were some uncertainty as to the meaning of the "specific proceedings" provision of the Act, the interpretation urged upon this Court by Mr. Thomas must be rejected as unreasonable.

15.     If the Emergency Order were required to list every type of proceeding for which audiovisual devices could be used, as Mr. Thomas advocates, that task would be extremely cumbersome, if not impossible, and the result would be completely unreasonable: a reader would have to sift through a list of proceedings that would likely go on for pages and pages.  For example, the Superior Court Kent County Civil Case Management Plan lists no fewer than 64 judicial assignment categories to classify various types of civil actions that may be filed, and there would necessarily be numerous types of proceedings related to each one of these actions.[17] That Plan also lists at least 41 different types of motions that parties may file.[18]  The Superior Court Kent County Criminal Case Management Plan similarly incorporates

---

[15] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) (first citing *Daniels v. State*, 538 A.2d 1104, 1110 (Del. 1988); then citing *Burpulis v. Director of Revenue*, 498 A.2d 1082, 1087 (Del. 1985)).

[16] *Daniels*, 538 A.2d at 1109-1110.

[17] *See* Super. Ct. Kent Cnty. Civ. Case Mgmt. Plan, 2-6 (July 1, 2000) (Revised Apr. 11, 2003).

[18] *Id.* at 11-13.

multiple types of proceedings.[19] Case management plans for New Castle and Sussex Counties also refer to numerous types of proceedings.[20] Other Delaware courts, including the Justice of the Peace Court, the Court of Common Pleas, Family Court, the Court of Chancery, and the Supreme Court, hear a multiplicity of case types and proceedings as well.

16.     Furthermore, were section 2008 of the Act to be interpreted in such a way as to require the Emergency Order to list every type of proceeding in every Delaware court for which audiovisual devices are permitted, it would consume an inordinate amount of time—an unnecessary and even dangerous exercise during a period of public emergency.  Finally, if any type of proceeding were inadvertently omitted, the Emergency Order would have to be amended to allow such a proceeding to be conducted virtually.

17.     In summary, the Court finds that the Emergency Order complies with the requirements of the Act by denoting the specific proceedings for which audiovisual devices shall be permitted.  Furthermore, the use of such devices is appropriately left to the discretion of each court or judicial officer.  Specifically, the Emergency Order states that Delaware courts are "authorized" to use audiovisual devices to conduct proceedings; it does not state that Delaware courts "shall" or "must" use audiovisual devices.[21]  Therefore, each court or judicial officer must determine, as appropriate to the case, whether audiovisual devices should be used.

---

[19] *See* Super. Ct. Kent Cnty. Crim. Case Mgmt. Plan (June 19, 2002).

[20] *See* Super. Ct. New Castle Cnty. Civ. Case Mgmt. Plan (June 20, 2019); Super. Ct. New Castle Cnty. Crim. Case Mgmt. Plan (Revised Mar. 2, 2000); Sussex Cnty. Civ. Case Mgmt. Plan (Modified May 22, 2003); Super. Ct. Sussex Cnty. Crim. Case Mgmt. Plan (Jan. 21, 2002).

[21] Admin. Ord. No. 17, at 3 ¶ 3.

**2. The Emergency Order states a compelling state interest for authorizing Delaware courts to use audiovisual devices to conduct proceedings other than jury trials.**

18.     Mr. Thomas also contends that the Emergency Order is invalid because it fails to provide a compelling state interest for the use of audiovisual devices for sentencing hearings in particular.

19.     The Act allows the Chief Justice to permit the use of audiovisual devices during a judicial emergency, but he must "provide a justification for the compelling state interest in using such devices" where "such usage is not otherwise authorized by statute or court rule."[22]

20.     According to the Emergency Order, audiovisual devices are authorized because of "the continuing threat COVID-19 poses to public health."[23]   The Emergency Order also provides that "COVID-19 continues to pose a serious risk to public health and safety of Delawareans, requiring the courts to continue taking steps to reduce the risk that COVID-19 poses to jurors, parties, witnesses, lawyers, judges, and court staff and the public who enter judicial facilities."[24]

21.     The Court finds that the Emergency Order has effectively stated a compelling state interest for the use of audiovisual devices for court proceedings, including sentencing hearings, *i.e.,* that COVID-19 is an ongoing threat to health and safety, and particularly to the health and safety of those members of the public and others who use judicial facilities.  The compelling interest for holding a sentencing hearing virtually is no different from that for any other proceeding for which virtual proceedings are not otherwise authorized by statute or court rule but where the courts are responsible for concluding proceedings as expeditiously as possible.[25]  As noted

---

[22] 10 *Del. C.* § 2008.

[23] Admin. Ord. No. 17, at 3 ¶ 3.

[24] Admin. Ord. No. 17, at 2.

[25] *E.g.,* as noted *infra*, Superior Court Criminal Rule 32(a)(1) requires the Court to impose sentences "without unnecessary delay."

*supra*, the Emergency Order appropriately commits the decision of whether to utilize such devices in a particular case to the discretion of the judicial officer. Where the circumstances confronting that officer render it advisable to move the case forward without delay, therefore, the compelling interest stated in the Emergency Order justifies the use of such devices.

**C.   The Court need not address the constitutional issues because it is able to decide this case on other grounds.**

22.     Having determined that the Emergency Order has properly suspended the "physical presence" requirement of Rule 43, the Court would logically next proceed to Defendant's constitutional arguments. However, a court should not decide constitutional issues when it is able to make its decision on non-constitutional grounds.[26] Constitutional questions should only be decided when they are "essential to the disposition of the case."[27] Here, the constitutional issues raised by Mr. Thomas are not essential to the disposition of his Motion for the reasons explained below.

**D.   Weighing the factors specific to this case, the Court finds a continuance advisable based on non-constitutional grounds.**

23.     The Court has considered the circumstances in the present case, as discussed *infra*, and given that this Court is granted wide discretion to grant or deny continuances, the Court finds, based on the specific facts of this case, that Mr. Thomas's sentencing should be continued. In making that finding, the Court has examined the relevant factors weighing in favor of denying Mr. Thomas's

---

[26] *See, e.g., Culver v. State*, 956 A.2d 5, 7 n.1 (Del. 2008) (citing *Downs v. Jacobs*, 272 A.2d 706, 707 (Del. 1970)) (deciding the case on non-constitutional ground because it could decide the case based on a statutory mandate); *Keeler v. Metal Masters Foodservice Equip. Co., Inc.*, 712 A.2d 1004, 1005-06 (Del. 1998) (finding that, because the claimant had not met his burden of proof under the displaced worker doctrine, the Court did not need to reach the constitutional issue of whether the doctrine violated the claimant's substantive due process rights).

[27] *Wheatley v. State*, 465 A.2d 1110, 1111 (Del. 1983).

continuance request against those weighing in favor of granting the request. The Court begins with a discussion of the former.

**1. Factors weighing in favor of denying the continuance request.**

24. Superior Court Criminal Rule 32 requires that sentences be imposed "without unnecessary delay."[28] Mr. Thomas's sentencing has been continued on multiple occasions, twice by the Court itself as a result of the COVID-19 pandemic. Ultimately, the Court rescheduled Mr. Thomas's sentencing to proceed virtually so that it could be concluded without further delay.

25. In addition, while Mr. Thomas has sought a continuance, the State has objected to his request and wishes to proceed. If the Court denied Mr. Thomas's continuance request, it would foster judicial economy and prove beneficial for the State because it would be one less proceeding that would have to be addressed once court proceedings, including jury trials, resume in person after the COVID-19 pandemic subsides.

26. Lastly, the Court finds that denying the continuance request could bring closure for the victim of Mr. Thomas's crimes. In so noting, the Court recognizes that the crimes for which Mr. Thomas is being sentenced occurred over 25 years ago, and that the victim at that time was between the ages of three and seven and is currently in her early thirties.

**2. Factors weighing in favor of granting the continuance request.**

27. That Mr. Thomas himself is requesting the continuance is an important factor weighing in favor of a continuance. While the State objects to the continuance request, Mr. Thomas is requesting it even though it would delay any exercise of his right to appeal.

28. Secondly, Mr. Thomas is currently serving an incarceration sentence of 45 years for other offenses, which went into effect in July 1996, and any period of

---

[28] Super. Ct. Crim. R. 32(a)(1).

11

incarceration imposed for the offenses in this case would commence only upon the completion of Mr. Thomas's current incarceration term. Even with statutory good time, Mr. Thomas still has years to serve before he would begin to serve any time for the convictions related to this case. Moreover, as noted in Mr. Thomas's motion, a continuance in the present case would pose no risk to public safety given that he is currently incarcerated.[29]

29.    In addition, the opportunity costs of failing to hold Mr. Thomas's sentencing at the present time are minimal. Unlike in *Kolaco,* where this Court found it imperative to hold a suppression hearing, a pretrial proceeding, by audiovisual technology over the objection of both parties to ensure prompt adjudication of Defendant Kolaco's case and to foster judicial economy,[30] here Mr. Thomas has already been adjudged guilty and must serve the time under his prior sentence before he can serve any time for the sentence that will be ordered in this case. While holding Mr. Thomas's sentencing once the COVID-19 pandemic subsides, and when the physical transportation of inmates to the courthouse resumes, could conceivably overcrowd the court's schedule due to limited courtroom space and staff, the sentencing of Mr. Thomas, who already faces years of additional incarceration for previously adjudicated offenses, would not need to pre-empt potential jury trials and could be scheduled for a later time once any backlog of jury trial matters is addressed.

30.    Finally, the State, while it has objected to Mr. Thomas's continuance request, has not noted any factors specific to this sentencing that would make its speedy conclusion imperative.

31.    Therefore, in weighing the above factors, and without having to decide

---

[29] Def's. Mot. to Continue at 4.

[30] *Kolaco*, 2020 WL 7334176, at *12. The *Kolaco* Court noted that when jury trials resumed, the trial of Mr. Kolaco, who was incarcerated, would likely take priority over older cases of non-incarcerated defendants and younger cases of incarcerated defendants, all of whom would have been waiting for trial for significant periods. *Id.*

12

the case on constitutional grounds,[31] the Court finds that a continuance is warranted.[32]

---

[31] Although the Court will not decide the constitutional issues, as they are not essential to the disposition of the case, the Court will provide non-binding *dicta* that may prove helpful if future parties or adjudicative bodies are presented with the same or similar issues. *See, e.g., Downs v. Jacobs*, 272 A.2d 706, 708 (Del. 1970) (providing *dicta* regarding whether Delaware's Landlord Distress Law would be deemed unconstitutional even though the Court had decided the issue on non-constitutional grounds). In *Franco v. State*, the Delaware Supreme Court held that the Confrontation Clause of the Sixth Amendment to the United States Constitution does not apply in the context of sentencing-related hearings and that procedural protections that are to be afforded a defendant at sentencing are "less stringent" than those afforded a presumptively innocent defendant at trial, where guilt is at issue. 918 A.2d 1158, 1161 (Del. 2007). Despite the *Franco* ruling, Mr. Thomas's counsel has cited to *Waples v. State*, 2021 WL 56688 (Del. Jan. 7, 2021), and *Harden v. State*, 180 A.3d 1037, 1040 (Del. 2018), for the proposition that a defendant has a constitutional right to an in-person sentencing. Specifically, Mr. Thomas's counsel argues that the statement by the *Waples* Court that the "docket does not reflect that Waples' former counsel or Waples have requested sentencing by video" supports the inference that the Superior Court cannot require a defendant to be sentenced virtually; however, it appears that the Supreme Court was simply observing that the defendant in that case, who was attempting to appeal his conviction prior to his sentencing, had not withdrawn his previous request to delay the sentencing until it could be held in person, which the Superior Court, in its discretion, had granted. *Waples*, 2021 WL 56688, at *1. Regarding *Harden*, that case did not address the issue of virtual sentencings, yet Mr. Thomas's counsel argues that that Court's acknowledgment that effective assistance of counsel requires appropriate supervision of the defendant's allocution implies that defense counsel must be ready to intervene if the defendant goes "off script" during allocution, and that defense counsel could not effectively do so if sentencing were virtual; however, this concern could be rectified by allowing private attorney-client consultation through the use of the audiovisual platform's "breakout room" feature along with a simple admonition by the sentencing judge prior to the hearing that either counsel or the defendant could request private consultation with each other at any time by either a verbal or a physical cue to the sentencing judge. *Compare Harden,* 180 A.3d at 1040 (reversing and remanding case for resentencing because defendant's counsel failed adequately to prepare himself or defendant for sentencing hearing), *with Kolaco*, 2020 WL 7334176, at *4 (explaining that the "breakout room" feature of the virtual platform permits defendants and their counsel to communicate in private).

[32] As noted *supra*, Superior Court Criminal Rule 32(a)(1) requires that sentences "be imposed without unnecessary delay." Due to the factors mentioned in this Order, continuance of Mr. Thomas's sentencing is appropriate and advisable, and in that sense "necessary."

## CONCLUSION

**WHEREFORE**, for the reasons discussed herein, Mr. Thomas's Motion to Continue Sentencing is **GRANTED**. The Court will schedule Mr. Thomas's sentencing as the Court's schedule permits after the transportation of inmates to the courthouse by the Department of Correction has resumed.[33]

**IT IS SO ORDERED**.


/s/Noel Eason Primos
Judge


NEP/wjs
*Via Email*
oc:    Prothonotary
        Alicia A. Porter, Esquire
        Stephanie H. Blaisdell, Esquire

---

[33] At the current time, transportation of inmates is expected to resume by late spring. Should the pandemic take an unexpected negative turn and the transportation of inmates be delayed for an inordinate period of time, the Court could revisit this decision.