Ferdell **SNOWDEN**, a/k/a Ferdell Harvey, Defendant Below, Appellant,

v.

**STATE of Delaware**, Plaintiff Below, Appellee.

No. 84, 1995.

Supreme Court of Delaware.

Submitted: Feb. 15, 1996.

Decided: March 12, 1996.

---

John H. McDonald, Assistant Public Defender, Wilmington, for appellant. ·

Timothy J. Donovan, Jr., Deputy Attorney General, Wilmington, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

The defendant-appellant, Ferdell Snowden, also known as Ferdell Harvey ("Snowden"),

was tried before a jury in the Superior Court. The jury found Snowden guilty of Reckless Endangering in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Unlawful Imprisonment in the Second Degree, Aggravated Act of Intimidation, and Menacing. The jury acquitted Snowden of Criminal Mischief under $500. Snowden was sentenced to be incarcerated for an aggregate of ten years, suspended after four and one-half years for five and one-half years' probation, to be served consecutive to another Delaware sentence.

In this direct appeal, Snowden has raised five issues. First, Snowden contends that the Superior Court erred by refusing to allow him to participate in sidebar conferences, since he was appearing *pro se*, instead requiring Snowden's standby counsel to perform that task at trial, thereby denying Snowden his right of self-representation. Second, Snowden alleges that the Superior Court erred in granting the motion of the City of Wilmington to quash a subpoena *duces tecum* for production of the personnel records of one of the Wilmington police officers who was a witness against Snowden at trial. Third, Snowden argues that his right to cross-examine a former Wilmington police officer was wrongfully denied on the basis of protecting the former officer's privacy. Fourth, Snowden submits that his ability effectively to cross-examine police witnesses against him was unfairly abridged by destruction of the taped record of his preliminary hearing. Finally, Snowden alleges that it was error for the Superior Court to refuse to instruct the jury on the lesser-included offense of Reckless Endangering in the Second Degree.

We conclude that Snowden's Sixth Amendment right of self-representation was denied when he was excluded from participating in all sidebar conferences. The United States Supreme Court has held that a denial of that right is not subject to a harmless error analysis. Therefore, the judgments of the Superior Court must be reversed. Snowden's other contentions will be addressed to the extent they are relevant to further proceedings when this matter is remanded.

## Facts

At some time before the events which led to Snowden's arrest, he and Wynnona Williams ("Williams") had been friends. On the evening of November 25, 1993, Snowden went to the house where Williams resided with Janeen Jones, Williams' two children and Jones' two children. Snowden had telephoned Williams earlier that day, but Williams had refused to speak to him.

When Snowden knocked at the door of Williams' residence, it was answered by Simone Harris ("Harris"), Williams' teenage cousin who was there to babysit. Harris let Snowden enter. Williams was in another room with Janeen Jones and a woman named Carolyn Jones.

Snowden demanded that Williams give him the shirt she was wearing. He had apparently given it to her previously as a gift. When Williams refused, Snowden ripped the shirt.

Harris witnessed this altercation and criticized Snowden for his behavior. In response, Snowden pulled out a silver handgun and pointed it at Harris. Upon seeing the gun, Janeen Jones and Carolyn Jones fled from the house through the bathroom window.

When Williams' five-year-old son tried to come to his mother's defense, Snowden pushed him aside. Snowden then grabbed Williams, put the gun to her head, and told her to take her clothes off. Williams heard Snowden click the gun back. Williams undressed down to her undergarments.

In the meantime, the City of Wilmington Police Department had been called. Officer George Koumpias ("Officer Koumpias") was the first to arrive at the scene. He observed Snowden coming out of the house. When Snowden saw the police officer, he ran back inside the house and escaped by breaking a window. Officer Koumpias pursued Snowden unsuccessfully.

During a search of the area for Snowden, another police officer found a maroon jacket protruding from underneath a parked car. In a pocket of the jacket was a prescription bottle bearing the name of Ferdell Harvey.

Under the jacket, the police officer found an unloaded, semi-automatic silver handgun. Snowden was apprehended later that evening.

### Self–Representation Includes Bench Conferences

██ The United States Supreme Court has held that the right of self-representation in "all criminal prosecutions" is implicit in the Sixth Amendment. *Faretta v. California*, 422 U.S. 806, 816–19, 95 S.Ct. 2525, 2531–33, 45 L.Ed.2d 562 (1975); *see also McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Although the Federal right to self-representation is only implicit in the Sixth Amendment, the right of self-representation is set forth explicitly in the Delaware Constitution: "In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, . . . ." Del. Const. art. I, § 7. The venerable history relating to the right of self-representation that is guaranteed by the Delaware Constitution was reviewed by this Court in *Hooks v. State*, Del.Supr., 416 A.2d 189, 198–99 (1980).[1]

The record reflects that Snowden made a timely request to represent himself at trial. The conditions precedent to granting an accused the Sixth Amendment right to conduct his or her own defense, are a knowing and intelligent waiver of the right to counsel and an agreement to adhere to the tribunal's rules of procedure. *McKaskle v. Wiggins*, 465 U.S. at 173, 104 S.Ct. at 948. Accordingly, the Superior Court made a comprehensive inquiry before ruling upon Snowden's motion to proceed *pro se*. *Briscoe v. State*, Del. Supr., 606 A.2d 103 (1992).

The Superior Court granted Snowden's motion for self-representation, but imposed a critical condition. It ruled that Snowden must remain at counsel table throughout the trial. The trial judge also appointed a standby attorney for Snowden.[2]

As a result of the Superior Court's order to remain at counsel table, Snowden was excluded from all sidebar conferences. Instead, Snowden's standby attorney was requested to come forward for those stages of the trial. Snowden contends that the Superior Court violated his right of self-representation by barring him from participating in sidebar conferences.

Several state and federal courts have addressed the issue of excluding a *pro se* defendant from participating in sidebar conferences. The most analogous cases are: *United States v. McDermott*, 64 F.3d 1448 (10th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 930, 133 L.Ed.2d 857 (1996); *People v. Rosen*, N.Y.Ct.App., 81 N.Y.2d 237, 597 N.Y.S.2d 914, 613 N.E.2d 946 (1993); *Oses v. Massachusetts*, 961 F.2d 985 (1st Cir.), *cert. denied*, 506 U.S. 954, 113 S.Ct. 410, 121 L.Ed.2d 334 (1992); and *United States v. Mills*, 895 F.2d 897 (2d Cir.), *cert. denied*, 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). In *McDermott*, the Tenth Circuit held that barring the defendant from participating in bench conferences violated his Sixth Amendment right of self-representation. *United States v. McDermott*, 64 F.3d at 1451–54. In *Oses*, the First Circuit held that the combination of three errors, one of which was exclusion of the defendant but not standby counsel from bench conferences, violated the defendant's Sixth Amendment right of self-representation. *Oses v. Massachusetts*, 961 F.2d at 986. Conversely, in *Mills*, the Second Circuit found no violation of that Sixth Amendment right when the defendant was excluded from sidebar conferences at which his standby counsel participated, because it concluded that "taking the trial as a whole,

---

**1.** The right of self-representation guaranteed by the Delaware Constitution is not a right to participate as co-counsel, i.e., there is no right to hybrid representation. *Hooks v. State*, Del.Supr., 416 A.2d 189, 199 (1980). *See also Matter of Haskins*, Del.Supr., 551 A.2d 65 (1988).

**2.** In *Wiggins*, the United States Supreme Court made explicit what had been implicit in *Faretta:*

A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection— to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. *McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122 (1984).

Mills had 'a fair chance to present his case in his own way.'" *United States v. Mills,* 895 F.2d at 905 (citing *Wiggins* ). In *Rosen,* the New York Court of Appeals held that when the "trial court advanced no reason for its refusal to permit [the] defendant to attend sidebars ... that defendant's State constitutional right to self-representation was violated." *People v. Rosen,* 613 N.E.2d at 950, 597 N.Y.S.2d at 918.

"In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *McKaskle v. Wiggins,* 465 U.S. at 177, 104 S.Ct. at 950. In *Mills,* the Second Circuit relied heavily on the foregoing statement. *See United States v. Mills,* 895 F.2d at 905. In *McDermott,* however, the Tenth Circuit found that two additional considerations in *Wiggins* constrained its analysis. Those considerations are as follows:

First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to *speak instead of the defendant on any matter of importance,* the *Faretta* right is eroded.

Second, *participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.* The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy. In related contexts the courts have recognized that a defendant has a right to be present at all important stages of trial,....

*United States v. McDermott,* 64 F.3d at 1453–54 (*quoting McKaskle v. Wiggins,* 465 U.S. at 178, 104 S.Ct. at 951) (emphasis added). The record reflects that both of the foregoing considerations were implicated when the Superior Court barred Snowden from participating in all sidebar conferences.

In describing the essential elements of the first consideration, the United States Supreme Court stated that standby counsel may not, over the defendant's objection, "speak instead of [the] defendant on any matter of importance...." *McKaskle v. Wiggins,* 465 U.S. at 178, 104 S.Ct. at 951. That directive was elaborated upon, as follows:

The *pro se* defendant must be allowed to control the organization and content of his [or her] own defense, to make motions, to argue points of law, to participate in *voir dire,* to question witnesses, and to address the court and the jury at appropriate points in the trial.

*Id.* at 174, 104 S.Ct. at 948. The right to address "the court" at "appropriate points in the trial" on "any matter of importance" undoubtedly includes the right to be heard at sidebar conferences.

The parameters of the second consideration set forth in *Wiggins* were also implicated by Snowden's exclusion from bench conferences. The guidance on those parameters was specific in *Wiggins:*

[T]he *Faretta* right must impose some limits on the extent of standby counsel's unsolicited participation.

.    .    .    .    .

Participation by standby counsel in the presence of the jury is more problematic. It is here that the defendant may legitimately claim that excessive involvement by counsel will destroy the appearance that the defendant is acting *pro se.* This, in turn, may erode the dignitary values that the right to self-representation is intended to promote and may undercut the defendant's presentation to the jury of his own most effective defense.

*McKaskle v. Wiggins,* 465 U.S. at 177, 181–82, 104 S.Ct. at 950, 953. By barring Snowden from sidebar conferences, the trial judge may have adversely affected "the jury's perception" that Snowden was "representing himself," i.e., destroyed Snowden's "dignity and autonomy."

■ The State acknowledges that trial counsel for any defendant is entitled to participate in all sidebars. The State also acknowledges that the denial of a defendant's Sixth Amendment right to self-representation is not subject to a harmless error analysis. Nevertheless, the State argues that, to the extent standby counsel participated in the sidebar conferences without Snowden's objection, it may be presumed Snowden waived his right to personally discharge that particular function at trial. *See McKaskle v. Wiggins*, 465 U.S. at 182, 104 S.Ct. at 953.[3]

The record reflects that Snowden did not waive his right to represent himself at bench conferences. When the fifth sidebar conference was convened, the following exchange took place between Snowden's standby counsel and the trial judge:

STANDBY COUNSEL: I'm sorry.

Past sidebars I've come forward. I'm becoming increasingly uncomfortable because I'm only standby counsel. You must bear in mind that Mr. Harvey [Snowden] is representing himself. I don't know what else to do, but—I just am increasingly uncomfortable with the level of involvement. The way this thing is proceeding is putting me in—

I am not the attorney. He is his attorney. He must be allowed to come to sidebar and present his views or the jury must be removed from the courtroom in order to have these sidebars....

THE COURT:

I do understand that, ... However, I believe that the prejudice to the defendant of having him traipse across here with two officers behind him each time there's a sidebar conference is greater than the disadvantage of his not being present. It's just happening far too often for me to excuse the jury each time.

So the Court recognizes that you do not represent him and the Court has also tak-

en note that each time there was a decision to be made or something to explain, that you have gone over to the defendant to make sure he was fully apprised.

I understand that does not take place of his being present here, ...

Accordingly, the record reflects that Snowden's absence from all sidebar conferences was imposed by the trial judge and not the result of a waiver by Snowden. *Accord People v. Rosen*, N.Y.Ct.App., 613 N.E.2d 946, 949, 597 N.Y.S.2d 914, 917, 81 N.Y.2d 237 (1993).

The United States Supreme Court has held that a denial of the right of self-representation is not amenable to "harmless error" analysis. *McKaskle v. Wiggins*, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8. Its rationale was a recognition that, when the right of self-representation is exercised, the likelihood of a trial outcome unfavorable to the defendant usually increases. *Id.* Therefore, the question for this Court is straightforward: was Snowden's right of self-representation respected or denied? *Id.*

Snowden's right of self-representation afforded him the opportunity to "address the court ... at appropriate points in the trial," including sidebar conferences. *McKaskle v. Wiggins*, 465 U.S. at 174, 104 S.Ct. at 949. Thus, Snowden's exclusion from all bench conferences was a denial of his Sixth Amendment right of self-representation. *Accord* Del. Const. art. I, § 7. Consequently, because the denial of that right is not subject to a harmless error analysis, Snowden must be granted a new trial.

### *Personnel Records*
### *Former Police Officer*

■ Since this matter will be remanded for further proceedings, this Court will address Snowden's other arguments on appeal. Snowden asserts that the Superior Court erred in quashing his subpoena for the per-

---

**3.** In the *Wiggins* decision, it was recognized that the right of self-representation is waived when standby counsel participates with the defendant's approval:

> A defendant can waive his *Faretta* rights. Participation by counsel with a *pro se* defendant's express approval is, of course, constitutionally

unobjectionable. A defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense.

*McKaskle v. Wiggins*, 465 U.S. at 182, 104 S.Ct. at 953.

sonnel files of Officer Koumpias. Snowden argues that if those records contained information which could have been used for impeachment purposes, it should have been provided to him by the State pursuant to the holding in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). At a minimum, Snowden contends the Superior Court should have reviewed the officer's personnel files *in camera* to determine whether they contained any information which should have been disclosed to him.

Prior to trial, Snowden subpoenaed the personnel files of the Wilmington police officers who participated in the investigation that resulted in his arrest. The City of Wilmington moved to quash the subpoena. The City Solicitor argued that the officers' personnel files were confidential and that their production for direct delivery to Snowden would be unreasonable. *See* Super.Ct.Crim.R. 17(c).

At a hearing on the motion to quash, the Superior Court asked Snowden to make a proffer regarding the relevance of the personnel records. Snowden indicated, *inter alia,* that he believed one of the officers, Officer Koumpias, had been terminated from the police force due to misconduct.[4] Snowden argued that Officer Koumpias' personnel records could contain information concerning the circumstances of his termination that would be admissible at trial for impeachment purposes. The City of Wilmington's attorney argued that the circumstances surrounding the officer's "firing" were privileged and confidential. The Superior Court ruled that Snowden had failed to demonstrate relevance and granted the motion to quash.

The Superior Court's decision to quash the subpoena for Officer Koumpias' personnel records presents interrelated questions.

First, what threshold showing is required by a defendant to compel the production of personnel files through a subpoena *duces tecum.* Second, procedural safeguards should be implemented to insure that the confidentiality of such files is not compromised improperly.

The answers to those questions in other jurisdictions can be found in two lines of decision. The first line of precedent addresses whether a defendant has made a sufficient showing to compel a review of police personnel records *by the prosecution.* The second line of cases addresses whether a defendant has made a sufficient showing to warrant an *in camera inspection by the court.*

There are relatively few cases involving the right of a defendant to have the prosecution review personnel files of law enforcement officers. Nevertheless, those decisions are almost unanimous in holding that in response to a specific motion, or upon subpoena *duces tecum,* the prosecution is required to review the identified personnel files for *Brady* material. *See United States v. Henthorn,* 931 F.2d 29, 31 (9th Cir.1991) ("[T]he government has a duty to examine personnel files upon a defendant's request for their production."). *See also United States v. Brooks,* 966 F.2d 1500, 1503 (D.C.Cir.1992) (finding it highly relevant that defense counsel pinpointed files that can be searched without difficulty).

There is a divergence of opinion with regard to when a defendant will be entitled to an *in camera* judicial review of police personnel files for general impeachment purposes. The majority view requires a determination that the defendant has established a factual basis for the requested files before ordering an *in camera* inspection. *See State v. Kaszubinski,* 177 N.J.Super. 136, 425 A.2d 711, 714 (1980).[5] "Generally, it is not necessary

---

4. Snowden's pretrial subpoena *duces tecum* sought production of the personnel records of three police officers who were involved in his case. In this appeal, however, Snowden only challenges the quashing of the subpoena with regard to Officer Koumpias' personnel records. Therefore, the issue of whether the subpoena was properly quashed with regard to the personnel records of the other police officers is not presently before this Court. *See Murphy v. State,* Del. Supr., 632 A.2d 1150 (1993).

5. Several courts have held that the State alone, as the party with the *Brady* obligation, should examine personnel files for exculpatory information. *See United States v. Presser,* 844 F.2d 1275, 1281 (6th Cir.1988) ("[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure"). *Accord United States v. Driscoll,* 970 F.2d 1472, 1482 (6th Cir. 1992), *cert. denied,* 506 U.S. 1083, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993) (quoting *Presser,* 844 F.2d at 1281); *United States v. Henthorn,*

for a defendant to establish that the personnel file actually contains relevant information, but he should at least advance 'some factual predicate which makes it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw.' " *Id.* (*quoting People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 897, 399 N.E.2d 924, 928 (1979)).[6] In fact, the attorney for the City of Wilmington invoked the majority rule:

> [City Solicitor's Office]: ... these are documents that should only be released after an in-camera review and eventually they should only be released after there has been some showing that they're in some way relevant.

Nevertheless, the Superior Court granted the motion to quash summarily.

Two circumstances are reflected in this record which independently established the requisite predicate for an *in camera* inspection. First, it was not disputed that Officer Koumpias had been terminated. Second, the prosecutor did not represent to the trial judge that the City of Wilmington personnel files had been examined by the State to ascertain if they contained *Brady* material. *See also Michael v. State*, Del.Supr., 529 A.2d 752, 755 (1987); *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381–82, 87 L.Ed.2d 481 (1985). We hold that the Superior Court should have conducted an *in camera* review of Officer Koumpias' personnel files to determine whether they contained

any information which should have been disclosed to Snowden. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57–58, 107 S.Ct. 989, 1001–02, 94 L.Ed.2d 40 (1987).[7]

### Former Officer
### Reason Employment Ended
### Confrontation Rights Denied

■ The next issue raised on appeal originated at trial during Snowden's cross-examination of Officer Koumpias. Snowden asked Officer Koumpias if he was then currently employed by the City of Wilmington Police Department. After Officer Koumpias responded in the negative, Snowden attempted to elicit the reason Officer Koumpias was no longer a police officer. The prosecutor objected. At a sidebar conference[8] during cross-examination of Officer Koumpias, the attorney for the State essentially acknowledged that Officer Koumpias had been "fired." The sidebar conference concluded with the objection being sustained.

"[A] primary interest secured by [the Confrontation Clause of the Sixth Amendment] is the right of cross-examination...." *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).[9] Nevertheless, the right of cross-examination is not without limits.

931 F.2d 29, 31 (9th Cir.1991) ("[F]ollowing ... examination [by the prosecution], the files need not be furnished to the defendant or the court unless they contain information that is or may be material to the defendant's case.").

6. A trial court's denial of access to the defense, following an *in camera* inspection, is reviewed for abuse of discretion and has generally been affirmed on appeal. *See, e.g., United States v. Lafayette*, 983 F.2d 1102, 1106–1107 (D.C.Cir. 1993); *United States v. Silkwood*, 893 F.2d 245, 248 (10th Cir.1989), *cert. denied*, 496 U.S. 908, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990); *State v. Blackwell*, 120 Wash.2d 822, 845 P.2d 1017, 1020–1022 (1993); *State v. Harris*, 227 Conn. 751, 631 A.2d 309, 314–315 (1993); *State v. Santiago*, 224 Conn. 325, 618 A.2d 32, 37–38 (1992); *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 896–99, 399 N.E.2d 924, 927–929 (1979).

7. *See, e.g., U.S. v. Henthorn*, 931 F.2d 29 (9th Cir.1991); *United States v. Kiszewski*, 877 F.2d 210, 216 (2d Cir.1989); *State v. Januszewski*, 182 Conn. 142, 438 A.2d 679, 695 (1980), *cert. denied*, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1005 (1981).

8. Even though Snowden was cross-examining Officer Koumpias, since this was a sidebar conference, only Snowden's standby counsel participated for the defense.

9. It is the very nature of cross-examination into credibility issues that counsel often cannot articulate the exact testimony that will develop:

> Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. It is the essence of a fair trial

"On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). This Court has identified several factors to guide the trial court in the exercise of its discretion:

> [T]he trial judge should consider (1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question of bias; (3) the danger of unfair prejudice, confusion of issues, and undue delay; and (4) whether the evidence of bias is cumulative.

*Weber v. State,* Del.Supr., 457 A.2d 674, 681 (1983). The record does not reflect whether the Superior Court considered these factors. The prosecution's objection was sustained without elaboration.

Although a trial judge has "wide latitude" in controlling cross-examination, that discretion is not absolute. In matters of credibility, especially those relating to potential bias, this Court has held:

> When the cross-examination relates to impeachment evidence, the test for determining if the trial judge's limitation on cross-examination violated the defendant's confrontation right is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness.... More specifically, we look to the cross-examination permitted to ascertain (1) if the jury was exposed to facts sufficient for it to draw inferences as to the

reliability of the witness and (2) if defense counsel had an adequate record from which to argue why the witness might have been biased....

*Id.* at 682.

The Third Circuit recently reviewed a civil trial during which the appellants had only been permitted to elicit from a former correctional officer that he had been "terminated" from his position. *Douglas v. Owens,* 50 F.3d 1226, 1231 (3d Cir.1995).[10] In *Douglas,* the Third Circuit concluded that the trial court had abused its discretion by not allowing the appellants an opportunity to question the former officer with regard to the circumstances surrounding his discharge. *Id.* The Third Circuit concluded that the word "terminated" and even the word "fired" were not "sufficient to effectively convey to the jury any alleged bias, lack of credibility, or motives" of the former officer. *Id.* The Third Circuit noted that the officer could have been terminated or fired for any number of "neutral" reasons which would not suggest to the jury that he was biased in favor of either party. *Id.* The Third Circuit held that, without further inquiry, the jury did not have sufficient information with which to make a discriminating appraisal of the former officer's motives or bias. *Id.*

"The bias of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Van Arsdall v. State,* Del.Supr., 524 A.2d 3 (1987) (*quoting* 3A J. Wigmore, *Evidence,* § 940 (Chadbourn rev. ed. 1970)). *See also Weber v. State,* 457 A.2d at 680; *Michael v. State,* Del.Supr., 529 A.2d 752, 759 (1987). A certain threshold of cross-examination is constitutionally required

---

that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

*Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931) (citations omitted).

**10.** Although *Douglas* was a civil case, the Third Circuit specifically noted that cross-examination in the *criminal* context assumes a heightened importance because of the constitutional implications inherent in confronting one's accuser pursuant to the Sixth Amendment. *Douglas v. Owens,* 50 F.3d 1226, 1231 n. 6 (3d Cir.1995).

by both the United States and Delaware Constitutions. *Weber v. State,* 457 A.2d at 682. The "discretion of the trial judge may not be interposed to defeat it." *Id.* In the *Douglas* decision, two possible methods of achieving this goal were suggested: (1) allow a limited cross-examination to set forth only the facts of the officer's discharge; or (2) allow an extensive cross-examination and provide the jury with a limiting instruction which explains that the purpose of the cross-examination was to reveal the bias of the witness. *Douglas v. Owens,* 50 F.3d at 1231 n. 9. The Third Circuit concluded that either of these methods would be acceptable, if, as a consequence, the jury receives adequate information with which to evaluate the bias and credibility of the witness. *Id.*

The only record which Snowden was permitted to develop before the jury by cross-examination was that Officer Koumpias had left the City of Wilmington police force. The Superior Court's blanket restriction on further cross-examination regarding the reasons why Officer Koumpias' employment has ended violated Snowden's confrontation rights under the Sixth Amendment and Article I § 7 of the Delaware Constitution. *Id. See Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). *Van Arsdall v. State,* 524 A.2d at 7. *Accord State v. Santiago,* 224 Conn. 325, 618 A.2d 32 (1992).

### Preliminary Hearing Testimony Unavailable But Reconstructed

■ Snowden's next argument is that his cross-examination of Officer Koumpias was impaired without a transcript of Officer Koumpias' preliminary hearing testimony. Snowden's preliminary hearing took place in the City of Wilmington Municipal Court on December 8, 1993. By the time of Snowden's trial it was no longer possible to obtain a transcript.[11]

The Superior Court was able to reconstruct the substance of the officer's preliminary hearing testimony. *See Moore v. Moore,* Del.Supr., 144 A.2d 765 (1958). The assistant public defender who represented

Snowden at the preliminary hearing testified on *voir dire* from his notes regarding the police officer's preliminary hearing testimony. The trial judge ruled that there was no inconsistency between the officer's trial testimony on direct examination and the assistant public defender's notes or recollection of the officer's preliminary hearing testimony.

The record reflects no abuse of discretion or error of law in the manner in which the trial judge handled this matter. The Superior Court found that any perception of inconsistency on Snowden's part was attributable to the fact that at a preliminary hearing the rules of evidence permit the testifying officer to recount the hearsay statements of others, for the limited purpose of establishing probable cause. *See* D.R.E. 1101(c). The trial judge's findings are supported by the record.

### Jury Instruction Lesser–Included Offense

Snowden's final contention is that the Superior Court erred by not instructing the jury with regard to the lesser-included offense of Reckless Endangering in the Second Degree. It is appropriate to instruct a jury with regard to a lesser-included offense only if there is a rational basis in the evidence presented to convict the defendant of an included offense rather than the charged offense. *Ward v. State,* Del.Supr., 575 A.2d 1156, 1159 (1990). Since this matter is being remanded for a new trial, Snowden can request and argue for any instruction on a lesser-included offense which he can demonstrate is supported by the evidence.

### Conclusion

The judgments of the Superior Court are reversed. This matter is remanded for further proceedings in accordance with this opinion.

---

11. Snowden's standby counsel at trial explained on the record that it was the practice of Municipal Court to tape record preliminary hearings and to maintain the tapes for a period of 60 days. The tapes are then reused, thereby erasing the previous recording.