Gregory F. **ROBINSON**, Defendant Below, Appellant,

v.

**STATE of Delaware,** Plaintiff Below, Appellee.

No. 10, 2009.

Supreme Court of Delaware.

Submitted: Nov. 18, 2009.
Decided: Dec. 8, 2009.

**14.** *Baker,* 906 A.2d at 149 (citing *Hughes v.* *State,* 437 A.2d 559, 571 (Del.1981)).

James M. Stiller, Jr., Esquire, Schwartz & Schwartz, Dover, DE, for appellant.

John Williams, Esquire, Department of Justice, Dover, DE, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice:

The defendant-appellant, Gregory F. Robinson ("Robinson"), appeals from a final judgment of conviction entered by the Superior Court. Robinson was found guilty of one count of Possession of a Deadly Weapon by a Person Prohibited ("PDWPP") under title 11, section 1448(a)(3) of the Delaware Code. Robinson appeals on two grounds. First, Robinson claims that the Superior Court erred by denying his right of self-representation under the Sixth Amendment, by excluding him from a sidebar conference. Second, Robinson claims that the Superior Court should have, *sua sponte,* acquitted him of PDWPP, because the State failed to prove

that the steak knife found on Robinson was a "deadly weapon" as defined in title 11, section 222(5) of the Delaware Code.

### Facts

On October 2, 2007, Dover Police Officer Christopher Bumgarner ("Bumgarner") and Probation Officer Kevin McClure ("McClure") conducted a home visit of a probationer at South Queen Street in Dover. During the visit, Bumgarner observed what he believed to be a drug transaction taking place between Robinson and two other men, in a parking lot across the street. Bumgarner and McClure left the home they were visiting and crossed the street.

When Robinson noticed the officers approaching, he began walking away from the parking lot. Bumgarner ordered Robinson to stop and raise his hands in the air. Robinson stopped, and as he raised his hands, Bumgarner saw him toss a plastic bag with a small white object to the ground. McClure then proceeded to handcuff Robinson and asked Robinson whether he had on him anything that was going to poke, stick, or harm McClure during a pat down search. Robinson answered that he had a knife on him. McClure retrieved a steak knife with a 4–3/4 inches-long blade from Robinson's front pants pocket. Robinson was charged with PDWPP.

Before trial, the Superior Court appointed Alexander Funk, Esquire, ("Funk") to represent Robinson. The Court later denied Robinson's motion to appoint new counsel and informed Robinson that he would either be represented by Funk, or proceed *pro se*. Robinson elected to proceed *pro se* and the Superior Court, after explaining to Robinson the meaning of self-representation, appointed Funk as standby counsel. The Superior Court ruled that Robinson would remain at counsel table throughout the trial, unless he chose to take the stand and testify.

At trial, Robinson presented an opening statement and cross-examined the two witnesses for the prosecution. He rested without presenting any witnesses for the defense. Robinson also participated in the prayer conference and gave a closing argument.

Robinson did not participate, however, in the one sidebar conference held during his trial, which occurred in response to Robinson's cross-examination of McClure. During the cross-examination, Robinson asked McClure whether "the suspect [was] on probation?" The prosecutor objected to the question, and asked the trial judge whether she and standby counsel could approach the bench. The judge granted the prosecutor's request. Robinson did not ask to participate in the sidebar conference and did not object to the participation of standby counsel.

A short sidebar conference ensued, in the presence of the jury, during which the trial judge, the prosecutor, and standby counsel, but not Robinson, discussed the content of Robinson's question.[1] After

---

1. The transcript reflects the following discussion at sidebar:

 MS. BUSWELL: Did I just hear him say: Have I ever been on probation?
 THE COURT: I think that's what he said.
 MS. BUSWELL: Is that what you heard him say?
 THE COURT: I'm having a hard time hearing.

 MR. FUNK: What I heard him say was: Was I the one that was on probation?
 MS. BUSWELL: Okay.
 MR. FUNK: That's what I thought. I thought he said: Was I the one that was on probation?
 MS. BUSWELL: Okay. I will withdraw my objection.
 MR. FUNK: I can't hear.
 THE COURT: Ask her.

Robinson's question was clarified, the prosecutor withdrew her objection. The sidebar conference concluded, and the trial judge, announcing no ruling on the prior objection, asked Robinson whether he wanted to restate his question. Robinson's cross-examination of McClure then continued.

Robinson was found guilty of the offense and was declared an habitual offender pursuant to title 11, section 4214 of the Delaware Code. He was sentenced to eight years at Level V incarceration followed by six months at Level III. This is Robinson's direct appeal.

### Sidebar Conference

 The United States Supreme Court has held that the right of self-representation in criminal proceedings is implicit in the Sixth Amendment.[2] That right is also made explicit in the Delaware Constitution.[3] The defendant's right to self-representation is either respected or denied. The denial of this right is not subject to a harmless error analysis.[4]

 In *Snowden v. State*,[5] this Court addressed the issue of whether excluding a *pro se* defendant from participating in sidebar conferences violates the right of self-representation. Snowden, like Robinson, was ordered to remain at counsel table and was excluded from *all* sidebar conferences held during his trial, although his standby counsel participated.[6] We held that Snowden's right of self-representation included the right to participate in sidebar conferences, for two reasons. First, the right of self-representation encompasses a *pro se* defendant's "right to address 'the court' at 'appropriate points in the trial' on 'any matter of importance,'" including sidebar conferences.[7] Standby counsel's participation, over defendant's objection, erodes the defendant's actual control over the case he chooses to present to the jury.[8] Second, participation by standby counsel without the defendant's consent might undermine the jury's perception that the defendant is representing himself, thereby harming the defendant's dignity and autonomy.[9] In determining whether the defendant's right of self-representation has been respected, the primary focus is upon "'whether the defendant had a fair chance to present his case [to the jury] in his own way.'"[10] We con-

MS. BUSWELL: That's okay. I will just withdraw my objection.
THE COURT: Okay. Thank you.

2. U.S. Const. amend VI; *Faretta v. California*, 422 U.S. 806, 816–19, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."); *see also Snowden v. State*, 672 A.2d 1017, 1020 (Del.1996).

3. Del. Const. art. I, § 7 ("In all criminal prosecutions, the accused hath a right to be heard by himself or herself and his or her counsel....").

4. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likeli-

hood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.").

5. *Snowden v. State*, 672 A.2d 1017 (Del.1996).

6. *Id.* at 1020.

7. *Id.* at 1021 (quoting *McKaskle v. Wiggins*, 465 U.S. at 174, 104 S.Ct. 944).

8. *Id.* A defendant can waive his right to represent himself at sidebar conferences. *Id.* at 1022 n. 3.

9. *Snowden v. State*, 672 A.2d at 1021.

10. *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. at 177, 104 S.Ct. 944).

cluded that because Snowden did not waive his right to represent himself at bench conferences (as reflected by the trial record), this right was violated. Snowden was granted a new trial.[11]

■ Robinson's reliance on Snowden is misguided. In this case, unlike in *Snowden*, Robinson's right of self-representation was not violated when he did not participate in the sidebar conference.[12] The record reflects that Robinson opposed any involvement of standby counsel during his trial, and refused any assistance from standby counsel. Nevertheless, Robinson did not object to standby counsel's participation in the sidebar conference. Robinson's silence in the face of his standby counsel's participation in the sidebar conference, which took place in the middle of his cross-examination of a witness, can only be deemed a consent.[13] Robinson did not ask to participate in the sidebar conference, and accordingly, the trial judge did not rule that Robinson was excluded.

It is also unlikely that the jury's perception that Robinson was representing himself was harmed by his failure to participate in the sidebar conference. The record reflects that Robinson actively managed his own defense at trial, and that the sidebar conference was the only event in the jury's presence in which standby counsel was actively involved. At the conclusion of the sidebar conference, the prosecutrix *withdrew her objection* and Robinson continued his cross-examination of the witness.

Further, this single occurrence could not have had any effect on Robinson's presentation of his defense to the jury, because Robinson did not present any defense witnesses. Instead, speaking in his own defense, Robinson conceded that he was carrying the steak knife, but argued that his action was defensible because he was using the knife as a work tool, not as a "deadly weapon."[14] As discussed below, Robinson's purpose in carrying the knife is irrelevant and is not a defense to PDWPP. Accordingly, the Superior Court did not violate Robinson's right to represent himself, and Robinson's failure to participate in the sidebar conference does not entitle him to a new trial.

### Steak Knife is a Deadly Weapon

Robinson's second argument on appeal is that the Superior Court erred in not acquitting him of the PDWPP charge, *sua sponte*, because the State failed to introduce sufficient evidence that the steak knife was a "deadly weapon." Because Robinson did not preserve this issue at trial, we review his claim on appeal for plain error.[15]

■ At trial, Robinson was convicted of PDWPP under title 11, section 1448(b) of the Delaware Code, which states: "[a]ny

**11.** *Id.* at 1022.

**12.** *Snowden v. State*, 672 A.2d at 1020, 1022.

**13.** *See People v. Rosen*, 81 N.Y.2d 237, 597 N.Y.S.2d 914, 613 N.E.2d 946, 949 (1993) ("[T]o the extent standby counsel joined in the proceedings without defendant's protest, it may be presumed that defendant waived the opportunity to personally execute the particular function."). *Cf. McKaskle v. Wiggins*, 465 U.S. at 182, 104 S.Ct. 944 ("A defendant like Wiggins, who vehemently objects at the begin-

ning of trial to standby counsel's very presence in the courtroom, may express quite different views as the trial progresses.... Wiggins objected vehemently to some of counsel's motions, but warmly embraced others.").

**14.** Robinson elected not to testify. This argument was presented, however, through Robinson's cross-examination of McClure and in his opening and closing arguments.

**15.** *Jackson v. State*, 600 A.2d 21, 23 (Del. 1991).

prohibited person as set forth in subsection (a) of this section who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm while so prohibited shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited." On appeal, Robinson does not contest that the State properly proved he was a person prohibited, pursuant to title 11, section 1448(a), nor does he contest that it proved he was actually in possession of a steak knife when he was handcuffed by McClure. Instead, Robinson argues that the State failed to establish a necessary showing that this steak knife was "[u]sed, or attempted to be used, to cause death or serious physical injury," in order for it to qualify as a "deadly weapon." This argument is incorrect: to be convicted of PDWPP, Robinson did not have to use or attempt to use the steak knife, a *per se* deadly weapon, to cause death or serious physical injury.

Robinson's argument that the State was required to prove an additional element, involving his specific use of the steak knife, blurs the distinction between the statutory definitions of "dangerous instrument" and "deadly weapon" in the Delaware Code. A dangerous instrument is defined in title 11, section 222(4) of the Delaware Code as "any instrument ... which, under the circumstances in which it is used ... is readily capable of causing death or serious physical injury...." A deadly weapon is defined in title 11, section 222(5) of the Delaware Code as including, within a list of several other objects, "a knife of any sort (other than an ordinary pocketknife

carried in a closed position)."[16] Section 222(5) states, in its entirety:

"Deadly weapon" includes a firearm, as defined in paragraph (11) of this section, a bomb, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick or any dangerous instrument, as defined in paragraph (4) of this section, which is used, or attempted to be used, to cause death or serious physical injury. For the purpose of this definition, an ordinary pocketknife shall be a folding knife having a blade not more than 3 inches in length.[17]

The crux of Robinson's argument on appeal is that the language, "which is used, or attempted to be used, to cause death or serious physical injury," qualifies the entire list of objects in section 222(5), including "a knife of any sort," rather than only dangerous instruments as defined in section 222(4). Robinson cites no authority in support of this grammatical parsing of the statutory language.

■ A review of the legislative history of this section of the Delaware Code demonstrates that the "use" language is intended to apply only to objects that are defined as dangerous instruments under section 222(4), and not to the listed *per se* deadly weapons such as "a knife of any sort." When the Delaware Criminal Code was adopted in 1973, "a knife of any sort" was included within the list of deadly weapons.[18] As the Commentary to the original Code noted, "the definition of 'deadly weapon' [in the Code] is more nar-

16. Del.Code Ann. tit. 11, § 222(5) (2007).

17. *Id.*

18. The original provision read "'Deadly weapon' includes any weapon from which a shot may be discharged, a knife of any sort (other than an ordinary pocketknife carried in a closed position), switchblade knife, billy, blackjack, bludgeon, metal knuckles, slingshot, razor, bicycle chain or ice pick." Del. Code Ann. tit. 11, § 222(5) (1973).

row than that given in present Delaware law."[19] Accordingly, in 1992, the General Assembly amended the section of the Delaware Criminal Code defining deadly weapons, in order to expand the statutory definition. With this purpose in mind, the General Assembly newly added to the definition of deadly weapons any items that had previously been defined as dangerous instruments (and not ordinarily capable of being defined as "deadly weapons" under the statute), so long as such instruments were *used* in a manner which could cause death or serious physical injury.

In *Taylor v. State*,[20] this Court held that the metal base of a fan, otherwise a dangerous instrument, constituted a deadly weapon for purposes of the PDWPP statute, based upon its particular *use* in that case. This Court stated:

> In our view both the purpose and meaning of the 1992 amendment to § 222(6) [prior numbering] are clear. The General Assembly intended to add to the specific list of deadly weapons any item which had previously fallen within the designation of a dangerous instrument. In doing so, the legislature imparted to such items a *'use'* test which characterized those items as deadly weapons if, under the circumstances of their use, they had the potential for the infliction of death or serious physical injury.[21]

It is therefore clear that the "use" language which the General Assembly added in 1992 was intended to apply as a limitation only to dangerous instruments as a newly-included type of deadly weapon, and not to all deadly weapons already enumerated in the statute.[22]

The Superior Court correctly instructed the jury on the two statutory elements of the offense of PDWPP: "(1) the defendant knowingly possessed a deadly weapon at the time of the charged offense. (2) the defendant was prohibited from possessing a deadly weapon because he had been convicted for the unlawful possession with intent to deliver a narcotic schedule—in this case, possession with intent to deliver/manufacture a narcotic Schedule I or II substance." As this Court recently stated, "possession of a deadly weapon by a person prohibited, without more, is the crux of a PDWPP charge."[23] Accordingly, the Superior Court's failure to acquit Robinson of the PDWPP charge, *sua sponte*, was not plain error.

### *Conclusion*

The judgment of the Superior Court is affirmed.

---

**19.** *See* Delaware Criminal Code with Commentary, § 222 (1973) (citing *Wisniewski v. State*, 138 A.2d 333 (Del.1957)).

**20.** *Taylor v. State*, 679 A.2d 449 (Del.1996).

**21.** *Id.* at 454 (emphasis added).

**22.** *See Johnson v. State*, 711 A.2d 18, 26–28 (Del.1998) (explaining the history of legislative amendments of the definition of "deadly weapon" between the original 1973 Delaware Criminal Code and the 1992 "use" language amendment).

**23.** *Lecates v. State*, 975 A.2d 799, 808 (Del. 2009).