# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,           )
                             )
                             )
        v.                   )        Case No. 2109014922
                             )
VALMIR JOSEPH,               )
                             )
        Defendant.           )

Submitted: December 19, 2024
Decided: February 13, 2025

Alexandra Manolakos, Esq.
Deputy Attorney General
820 N. French Street 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Joseph Hurley, Esq.
1215 N. King Street
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER

## ON DEFENDANT'S MOTION FOR A NEW TRIAL

Manning, J.

# FACTS AND PROCEDURAL HISTORY

Before the Court is Defendant's Amended Motion for a New Trial. From November 13 - 14, 2024, this Court held a jury trial on the charges of Driving Under the Influence of Alcohol (DUI)[1] and Failure to Obey a Traffic Control Device.[2] At trial, the State presented two witnesses: Cpl. Johnson, of the Wilmington Police Department, the arresting officer, and Ms. Julie Willey (Ms. Willey), the director of the Delaware State Police Crime Laboratory and the person who analyzed a sample of the Defendant's blood. Ms. Willey was offered by the State as both a fact and expert witness.

During Ms. Willey's testimony, Defendant objected to the State's attempt to enter Ms. Willey's toxicology report into evidence, stating that more foundation needed to be laid to show that the blood was drawn in compliance with protocol and/or the blood kit instructions. Although Defendant's objection was broad, the Court removed the jury and allowed Defendant to conduct an extensive *voir dire* of Ms. Willey. After Defendant's *voir dire*, the Court ruled that Ms. Willey could testify about the blood results in her report and found by a preponderance of the evidence that her testimony was relevant and reliable. After the jury was brought

---

[1] 21 *Del. C.* § 4177(a)
[2] 21 *Del. C.* § 4122.

2

back in, Defendant continued his cross-examine of Ms. Willey. An issue arose as to the permissible scope of the cross-examination and the Court cautioned Defense Counsel to avoid questions and argument about the scientific reliability of Ms. Willey's protocol in front of the jury.

The State's case concluded on November 14, 2024, and the Defendant did not present any witnesses or evidence. During a conference to discuss the proposed jury instructions, neither party requested any specific instructions, nor had any substantive objections to the Court's proposed instructions. The jury subsequently found Defendant guilty of DUI but acquitted him of Failure to Obey a Traffic Control Device. Defendant filed a timely motion for a new trial on November 20, 2024.

## STANDARD OF REVIEW

Court of Common Pleas Criminal Rule 33 governs Motions for a New Trial. The Court may grant a new trial to the defendant if required in the interest of justice.[3] A new trial is warranted if the alleged reason for a new trial resulted in actual prejudice or infringed upon the defendant's fundamental right to a fair trial.[4] A new trial is not warranted unless there is demonstrated prejudice.[5] "A defendant who fails to timely object at trial ordinarily is precluded from raising the issue of an

---

[3] CCP Crim. R. 33.
[4] *State v. Ryle*, 2015 WL 5004903, at *1 (Del. Super. Aug. 14, 2015).
[5] *State v. Sierra*, 2012 WL 3893532, at *3 (Del. Super. Sep. 6, 2012).

unpreserved claim of trial error on appeal, unless the error is plain."[6] A defendant demonstrates plain error when they show a deprivation of a substantial right or manifest injustice.[7] To prove a deprivation of a substantial right, a defendant must show that the alleged error is so clearly prejudicial as to jeopardize the fairness and integrity of the trial process.[8]

## DISCUSSION

Defendant raises three arguments to support his motion for a new trial: (1) the jury instructions for the DUI charge did not include a specific unanimity instruction; (2) the State failed to prove that Ms. Willey was qualified to testify under Delaware Rules of Evidence (D.R.E.) 702; and (3) the Court infringed on Defendant's constitutional right to confront Ms. Willey by limiting Defendant's cross-examination of her. The Court will address each argument in turn:

### (1) Lack of unanimity instruction for DUI charge

Defendant argues that because the jury instructions did not include a specific unanimity instruction the verdict was "rife with speculation" and it is unknown if the jury came to unanimous decision. The State agrees that a stand-alone specific unanimity instruction would have been the *ideal* way to instruct the jury, however, the absence of the stand-alone instruction did not constitute plain error.

---

[6] *State v. Dougherty*, 2010 WL 4056152, at *1 (Del. Super. Sept. 30, 2010).
[7] *Id.*
[8] *Id.*

4

Unfortunately, neither side had the clairvoyance to make such a request during trial — when the Court could have crafted an *ideal* jury instruction. Alas, the Court will examine the relevant law regarding jury instructions in light of the instruction it actually gave.

In *Probst v. State*, the Delaware Supreme Court "held that generally a specific-unanimity instruction is not required because 'a general unanimity instruction is sufficient to [e]nsure that the jury is unanimous on the factual basis for a conviction.'" [9] If the State chooses to present alternative or multiple theories to the jury, a specific-unanimity instruction is required if "(1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the state has presented evidence on each of the alternatives."[10] Due to the possibility of nonunanimous verdict, when one count encompasses two separate incidents, the trial judge must instruct the jurors that if a guilty verdict is returned, the jurors must be unanimous on which incident they find the defendant guilty.[11] However, there is no danger of nonunanimous verdict when one charge encompasses only a single incident.[12]

---

[9] *Hale v. State*, 2024 WL 5116860, at *3 (Del. 2024) (quoting *Probst v. State*, 547 A.2d 114, 120 (Del. 1998).

[10] *Id. quoting State v. Edwards*, 524 A.2d 648, 653 *(Conn. App. Ct. 1987))*.

[11] *Id.*

[12] *Id. at *4 quoting Owens v. United States*, 497 A.2d 1086, 1093 (D.C. 1985))*.

Defendant's argument is unavailing for two reasons. First, as previously noted, Defendant failed to raise this argument at trial. Because of this omission, Defendant must prove that the Court committed plain error in failing to give a specific unanimity jury instruction. Second, the Court is convinced that the jury understood there had to be unanimity *as to which theory* the jury convicted Defendant under due to the structure and language of the instructions. The Court finds that the lack of a unanimity instruction did not deprive Defendant of a substantial right or manifest injustice for the reasons set forth below.

Defendant chose not to exercise certain tools at his disposal that could have prevented this issue from the start. During the trial, Defendant had ample opportunity to discuss, edit, or object to the substance of the jury instructions. Defense Counsel could have also requested that the Judge poll the jury to ensure that the verdict was unanimous. Instead, Defendant acquiesced and waited to file this motion post-trial.

Furthermore, the Court is convinced that the jury understood there had to be unanimity due to the structure of the jury instructions and the language that "your verdict must be unanimous."[13] The jury instructions were structured in a way to ensure that each theory of criminal liability presented by the State was separated.

The Jury Instructions read as follows:

"No person shall drive a vehicle:

---

[13] Trial Jury Instructions

6

(1) When the person is under the influence of alcohol; **or**

(2) When the person's alcohol concentration is, within 4 hours after the time of driving .08 or more.

In order to find the defendant guilty of Driving While Under the Influence of Alcohol or With a Prohibited Alcohol Content, you must find that the following elements have been established beyond a reasonable doubt:

(1) The defendant did drive a motor vehicle at or about the time and place charged; *and*

(2) The defendant was under the influence of alcohol when he drove the motor vehicle.

**or**

(1) The defendant did drive a motor vehicle at or about the time and place charged; *and*

(2) The defendant had a prohibited alcohol concentration within four hours after the time of driving, .08 or more and that was the result of an amount of alcohol in the defendant when he was driving."[14]

The instructions include "if you do not find or if you have reasonable doubt as to either of the two elements defined you should find him not guilty . . . *and go on to consider the second means alleged*" (emphasis added).[15] Both theories were defined to the jury twice and separated with multiple conjunctions throughout to signal to the jury that both elements need to be included or that there was a choice between theories. Also, the language that "your verdict must be unanimous" which

---

[14] Trial Jury Instructions.
[15] Trial Jury Instructions.

7

was included in the jury instructions, signifies to the jury that they must all agree on the verdict. Thus, Defendant has failed to prove that the lack of a specific unanimity instruction constituted plain error.

**(2)** ***Defendant alleges that the State failed to prove that Willey was qualified to testify under D.R.E. 702.***

Defendant argues that the State failed to meet the admissibility standards required for the introduction of expert testimony and therefore the Court, as a gatekeeper of evidence, failed in allowing the testimony. At the outset, it is worth noting that Ms. Willey has testified as an expert regarding the very same issues and testing presented in this case on many occasions over the past two decades — in short, there was nothing new or novel amount her testimony. Furthermore, it is also worth noting that Defense Counsel has previously challenged Ms. Willey's expertise and testing methods, to no avail, in Delaware courts on numerous occasions.[16] Yet, despite this intimate familiarity with the issues, Defense Counsel chose not to file a *motion in limine*, but rather, raised these foundational arguments regarding the admissibility of scientific evidence in the middle of the trial.

The State argues that the Court correctly allowed Ms. Willey to testify about the blood results under D.R.E. 702. This Rule states: A witness who is qualified as

---

[16] *See, e.g., State v. Casaletto*, 2023 WL 3243535 (Del. Super. May 3, 2023); *State v. Bowie*, 2022 WL 4004005 (Del. Super. Sep. 1. 2022); *State v. Patel* 2021 WL 754303 (Del. Super. February 26, 2021); *State v. Green*, 2019 WL 5273230 (Del. Super. October 14, 2019).

8

an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking to admit the expert testimony must show, by a preponderance of the evidence, its admissibility under D.R.E. 702.[17] "Once expert testimony is challenged, the reviewing court must ensure that the proffered testimony is both relevant and reliable."[18] The reviewing court, as the gatekeeper, must then determine if "the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." To make this determination the reviewing Court applies a five-step test. The five-step test instructs a trial judge to determine whether:

(1) the witness is qualified as an expert by knowledge, skill experience, training or education; (2) the evidence is relevant; (3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (4) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[19]

---

[17] *Brown v. Fisher-Price, Inc.*, 2024 WL 5196394, at *1 (Del. Super. Dec. 20, 2024).
[18] *Id.* quoting *Scottoline v. Women First, LLC*, 2023 WL 2325701 at *3 (Del. Super. Mar. 1, 2023)).
[19] *Id.*

There is a strong preference for admitting evidence that may assist the trier of fact.[20] Ms. Willey's qualification to testify are analyzed under the five-step test:

Step one of the *Daubert* test requires that the witness is qualified as an expert by knowledge, skill, experience, training or education. During her testimony, Ms. Willey stated that she had 32 years of experience at the Delaware State Police Crime Laboratory and currently is the director. She has majored in Biology and Genetic Engineering Technology and minored in Chemistry; participated in the Borkenstein Course on Alcohol and Highway Safety and undergone training on evidential breath testing; and is a member of the American Academy Forensic Science, the American Society of Crime Lab Directors, and the International Association for Chemical Testing. Ms. Willey regularly analyzes blood to determine BAC as a part of her duties and handles the purchasing, distribution, instruction-writing, and training for the blood kits used by Delaware law enforcement. Ms. Willey was clearly qualified by knowledge, training, education, and experience, thus step one was met.

Step two of the test requires for the evidence to be relevant. "[E]xpert testimony is relevant when it assists the trier of fact to understand the evidence or determining a fact is in issue."[21] Furthermore, "[f]or scientific evidence to be deemed reliable, the testimony must be rooted in science and derived from the

---

[20] *Id.*
[21] *Id.*

scientific method."[22] Here, Ms. Willey's testimony was rooted in science. Ms. Willey testified that to analyze blood she uses a headspace gas chromatograph. Before testing the blood samples, Ms. Willey runs standardized controls to ensure the machine is working properly. The process Ms. Willey undergoes after receiving a blood sample includes logging the sample in to the database, ensuring it is sealed, and removing two small amounts of blood so she can test it twice to validate results. At no time during the trial did the Defendant challenge the reliability or science behind the use of headspace gas chromatograph to determine BAC. The Court found that Ms. Willey's testimony was rooted in science and derived from the scientific method. Thus, the second step was met.

The third step requires that the expert's opinion is based upon information reasonably relied upon by experts in the particular field. As referenced by the State, Ms. Willey attended the Borkenstein Alcohol and Highway Safety Course, which educates experts in the field on this subject matter and the use of headspace gas chromatograph has been accepted since 1967. This is sufficient to prove that Ms. Willey's testimony is based upon information reasonably relied upon by experts in the particular field. Thus, the third step was met.

Step four requires that the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. Ms. Willey's testimony

---

[22] *Brown v. Fisher-Price, Inc.*, 2024 WL 5196394, at *2 (Del. Super. Dec. 20, 2024).

addressed the issue of whether Defendant's blood was above a .08 within four hours of driving. This testimony directly goes to an element of the crime that the State is trying to prove. Thus, the fourth step was met. Step five requires that the expert testimony will not create unfair prejudice or confuse or mislead the jury. Since Ms. Willey's testimony was tailored to one narrow issue, her testimony did not create unfair prejudice or confuse or mislead the jury. Thus, the fifth step was met. Therefore, the Court finds that Ms. Willey was qualified to testify under D.R.E. 702.

**(3)** ***The Defendant alleges the Court infringed on Defendant's constitutional right to confront Willey by limiting Defendant's cross-examination of her.***

Defendant argues that the Court infringed on Defendant's constitutional right to confront Ms. Willey by limiting Defendant's cross-examination of her because it thwarted his intended closing argument and trial strategy. The State argues that the Court properly limited Defendant's cross-examination of Ms. Willey and the limitation did not offend the interests of Justice.

Under the Confrontation Clause, trial judges retain "wide latitude" to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness' safety , or interrogation that is

12

repetitive or only marginally relevant.[23] Despite trial judges "wide latitude" in controlling cross-examination, their discretion is not absolute.[24]

Following a relatively extensive *voir dire*, the Court imposed a limitation on Defendant's cross-examination of Ms. Willey pertaining to the instructions for the blood collection vial due to concerns it would cause confusion for the jury. Defendant argues that he intended for Ms. Willey to "concede that she had taken it upon herself to institute a process with regard to the blood collection that is antagonistic to the process as instructed by the manufacturer of the test tubes."[25] More specifically, Defendant's objection centered on the instructions for mixing the blood sample and the actual way in which the phlebotomist mixed the sample after drawing it from Defendant. However, as the Court noted at the time, this was not an appropriate line of questioning in front of the jury. As previously litigated, Ms. Willey had the requisite authority, knowledge and experience to write and change the DSP Instructions.[26] Director Willey was qualified in blood collection and testing, and therefore was the proper person to authorize changes to the State's collection procedures, the DSP Instructions, in accordance with the Insert.[27] Thus, a discussion about the current sample instructions used by the Delaware State Police Crime

---

[23] *Smith v. State*, 913 A.2d 1197, 1233 (Del. 2006)(quoting *Snowden v. State*, 672 A.2d 1017, 1025 (Del.1996)).
[24] *Id.*
[25] Defendant's Motion for a new trial page 17.
[26] *State v. Patel*, 2021 WL 754303, at *4 (Del. Super. Feb. 26, 2021).
[27] *Id.* at *6.

Laboratory versus the instructions suggested by the manufacturer of the test tubes would confuse the jury. Additionally, Ms. Willey had already testified during *voir dire* that the mixing of the blood sample was sufficient — a position Defendant could not, and did not, rebut. Thus, this line of questioning was not helpful to the jury because it would only have served to magnify an issue that was outside the scope of what the jury was supposed to determine. Additionally, Ms. Willey testified that if the contents of the vial had not been properly mixed, it would have been apparent when she went to test the vial.[28] Ultimately, the question of scientific reliability and admissibility is a question for the judge, not the jury.[29]

Defendant conducted an extensive *voir dire* and cross-examination of Ms. Willey attempting to challenge her testimony. However, Defendant never offered its own expert testimony to rebut Ms. Willey's testimony that the blood mixing procedure was adequate and sufficiently followed by the phlebotomist.[30]

---

[28] During *voir dire*, Ms. Willey testified that "The fact that I had a liquid sample to test, [the blood] had to have been mixed [fully]." FTR Recording, 11/14/2024, 11:40:20 to 11:40:27.

[29] *See, e.g., Hudson v. State*, 312 A.3d 615, 628-630 (Del. 2024).

[30] In footnote #2 of Defendant's Motion, Defense Counsel complains that the "Court actively became involved and directed that [Ms. Willey] be shown the video while she was testifying [during *voir dire*]," and this was a "nuclear device" that "thwarted" Defendant's strategy. The problem the Court has with Defense Counsel's argument is that it fails to recognize the underlying purpose for the *voir dire* of an expert witness. Contrary to what Defense Counsel might think, the purpose of the hearing was not to establish facts that Defense Counsel could then argue to the jury *vis-à-vis* a normal cross-examination, it was so the Court could make a legal determination regarding the admissibility of scientific evidence. Therefore, as the finder of fact during the hearing, the Court is more than within its power and discretion to ask questions of

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for a New Trial is

**DENIED**.

**IT IS SO ORDERED.**

Bradley V. Manning, Judge.

---

a witness or direct that they be shown certain evidence if it is relevant to the Court's legal determination.