IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRIANA HAZELETT, | § | |
| | § | No. 151, 2024 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | Cr. I.D. No. 2203001161 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: January 29, 2025
Decided: April 25, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en banc*.

# **O R D E R**

Upon consideration of the parties' briefs and the record below, and following oral argument, it appears to the Court that:

(1) Defendant-Below, Appellant Brianna Hazelett asks this court to vacate her convictions because the trial court improperly limited Hazelett's cross-examination of the State's chief investigating officer. Hazelett advances several arguments in support of this claim. First, she contends that the trial court violated her constitutional right to present a complete defense and cross-examine her accusers by "severely restrict[ing]" her right to impeach the chief investigating officer's credibility. We reject that argument because the trial court properly applied the four-

1

factor *Snowden*[1] test to determine the scope of impeachment. Second, Hazelett argues she was constitutionally entitled to challenge the credibility of the chief investigating officer's testimony regarding her alleged turn-signal violation. This argument fails because the trial court did not preclude Hazelett from arguing that the State had not proved the statutory elements of a turn-signal violation beyond a reasonable doubt. Rather, the court precluded her from arguing that the traffic stop was illegal. Third, Hazelett asserts that the trial court erred when it suggested that defense counsel had a responsibility to disclose impeachment material to the State before cross-examination. The trial court's error in this respect was harmless and did not affect the jury's verdict. We therefore affirm Hazelett's convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

(2) On March 2, 2022, Corporal Leonard Moses of the Wilmington Police Department ("WPD") was conducting proactive patrol at the corner of Madison and 5th Streets in Wilmington, Delaware.[2] He noticed a black Volkswagen Passat with four occupants making "furtive movements throughout the vehicle" and began to follow.[3] When the vehicle turned onto the 600 block of West 6th Street without using a turn signal, Corporal Moses initiated a traffic stop.[4]

---

[1] *Snowden v. State*, 672 A.2d 1017, 1024 (Del. 1996).

[2] App. to Opening Br. at A18.

[3] *Id.* at A19–21.

[4] *Id.* at A20–21.

2

(3)    As Corporal Moses and his partner, Officer Chris Rosaio, walked toward the stopped vehicle, Corporal Moses smelled a strong odor of marijuana coming from it.[5]  The driver, Briana Hazelett, stuck her hands through the open car window and informed the approaching officers that her firearm and a removed magazine were on the dashboard.[6]  Corporal Moses saw the firearm on the dashboard and noticed a burning marijuana blunt near the center console.[7]

(4)    Corporal David Schulz was called to assist and arrived at the scene after the traffic stop was underway.[8]  Corporal Schulz detected a strong odor of burnt marijuana coming from the vehicle.[9]  He searched the vehicle at the scene and later conducted an inventory search at the police station.[10]  Corporal Schulz located marijuana near the vehicle's emergency brake lever, baggies containing marijuana in the front and back seat areas, and a burnt marijuana blunt by the gear shift.[11] Corporal Schulz collected Hazelett's gun, an extended magazine, and nine rounds of ammunition that were inside the magazine.[12]  During the inventory search, Corporal

---

[5] *Id.* at A21.

[6] *Id.* at A21–22.

[7] *Id.* at A21.

[8] *Id.* at A34.

[9] *Id.* at A35.

[10] *Id.* at A39.

[11] *Id.* at A35–37; App. to Answering Br. at B2 (Corporal Schulz's Body-Worn Camera Video at 11:20).

[12] App. to Opening Br. at A38–39

Schulz recovered a "cross body bag" on the passenger-side floor containing a pill bottle with Hazelett's name on it.[13] The pills inside the bottle were later determined to be methamphetamine.[14]

(5) On November 21, 2022, a grand jury indicted Hazelett for Possession of a Firearm by a Person Prohibited ("PFBPP"), Illegal Possession of a Controlled Substance, Possession of Marijuana, Driving a Vehicle While License is Suspended or Revoked, and Failure to Use a Turn Signal.[15] Hazelett's two-day jury trial began on May 1, 2023.[16] The State called Corporal Moses, Corporal Schulz, Officer Rosaio, Anna Wyckoff,[17] and Hugh Stephey[18] during its case-in-chief.[19] After the State rested, Hazelett testified in her own defense.[20]

(6) During Corporal Moses's cross-examination, Hazelett's counsel sought to impeach him with his inconsistent sworn statements in a 2016 case involving a different defendant, Daryus Whittle.[21] In *State v. Whittle*, Corporal Moses authored

---

[13] *Id.* at A39–40.

[14] *Id.* at A49–50.

[15] *Id.* at A1, A6-10.

[16] *See id.* at A12.

[17] Wyckoff testified in her professional capacity as an Analytical Chemist II with the Delaware Division of Forensic Science. *Id.* at A46.

[18] Stephey testified in his professional capacity as an employee of the firearms and ballistics section of the forensic services unit at the WPD. *Id.* at A51.

[19] *Id.* at A12.

[20] *Id.*

[21] *Id.* at A32.

an arrest warrant in which he swore under oath that he and a fellow officer "observed" Whittle remove a firearm from his waistband and place it inside a bundle of newspapers.[22] Corporal Moses then stated under oath that he "observed" Whittle hide the firearm under a broken cement stairway.[23] At a preliminary hearing in Whittle's case, Corporal Moses testified that he "observed" Whittle hide the firearm.[24] And when he testified at Whittle's trial, Corporal Moses reiterated that he "saw" Whittle pull the firearm from his waistband.[25] After additional cross-examination, however, Corporal Moses revealed that neither he nor his partner personally saw Whittle handle or hide the firearm before they arrested him.[26]

> Rather, [Wilmington Police Department] received a call from Downtown Visions advising them that a Downtown Visions surveillance camera recorded a man matching Whittle's description hiding a firearm in the manner previously described. Without viewing the video recording, Corporal Moses and his partner then drove to the area, arrested Whittle, and recovered the gun. Corporal Moses testified that he eventually watched the video, but not until after he authored the arrest warrant.[27]

---

[22] *Mobley v. State*, 2024 WL 5316320, at *2 (Del. Dec. 5, 2024) (discussing Corporal Moses's inconsistent sworn statements in *State v. Whittle*).

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

The Superior Court struck Corporal Moses's identification testimony as hearsay and granted Whittle's motion for judgment of acquittal based on insufficient evidence.[28]

(7) In Hazelett's trial, the State objected when her counsel attempted to impeach Corporal Moses by asking questions regarding his inconsistent sworn statements in the *Whittle* case. The State argued that the issue was previously addressed by the Superior Court in *State v. Mobley*.[29] The judge in Hazelett's trial deferred ruling on the objection until she could research the *Mobley* matter.[30] The judge instructed Hazelett to move on to a different line of questioning in the meantime.[31]

(8) The trial judge returned to the issue after the lunch recess.[32] Armed with an understanding of the *Mobley* ruling, the court permitted "cross-examination on the impeachment line of questioning."[33] During the lunch recess, Hazelett also

---

[28] *Id.* at *3.

[29] App. to Opening Br. at A32 ([State]: "If it's the case that I'm thinking of, this issue was raised . . . [in] State v. Terrell Mobley, [and the trial judge] specifically considered this issue and made no findings regarding incorrect testimony.").

[30] *Id.* at A34.

[31] *Id.* at A34.

[32] *Id.* at A41.

[33] *Id.*

6

provided the State with 195 pages of Corporal Moses's prior testimony, and the court granted the State's request to review the voluminous materials overnight.[34]

(9) Later in the day, the court again raised Corporal Moses's potential testimony and inquired into Hazelett's counsel's proposed line of questioning.[35] Hazelett's counsel indicated that she planned to ask about Corporal Moses's probable cause affidavit, his preliminary hearing testimony, and his trial testimony from *Whittle*.[36] She also stated that she planned to ask Corporal Moses about the importance of truthfulness, but did not intend to delve deeply into the facts underlying *Whittle*.[37]

(10) The trial court applied the factors that this Court articulated in *Snowden v. State*[38] as a guidepost for a trial judge considering proposed limitations on cross-examination.[39] Although the court concluded that impeaching Corporal Moses's credibility would have limited utility because most of the observations to which he testified were captured on body-worn camera, the court reiterated that it would allow

---

[34] *Id.* at A42–43. After expressing consternation that Hazelett's counsel did not raise the impeachment material before trial, the trial judge concluded that it was fair to allow the State to review the materials overnight. *Id.* Defense counsel did not object. *Id.* at A43.

[35] *Id.* at A54–55.

[36] *Id.* at A55.

[37] *Id.* The trial court agreed that "delving too deeply into the facts" of *Whittle* was not relevant. *Id.*

[38] 672 A.2d 1017 (Del. 1996)

[39] App. to Opening Br. at A55.

inquiry into the *Whittle* matter.[40]  The court, however, placed limitations on the scope of cross-examination.  Specifically, the court prohibited the defense from arguing that the traffic stop was illegal[41] and precluded counsel from asking or implying that *Whittle* was dismissed due to Corporal Moses's contradictory statements.[42]  As to that point, the court emphasized that the *Whittle* court made no specific finding of dishonesty and dismissed the case for insufficient evidence.[43]

(11)   The following day, May 2, 2023, the State re-called Corporal Moses.[44] Defense counsel re-examined him, asking questions related to truthfulness and his prior contradictory sworn statements in *Whittle*.[45]  After concluding her other questions, defense counsel renewed her request to question Corporal Moses regarding the dismissal of the *Whittle* case.[46]  The court denied that request, finding that the proposed questions could tend to confuse the jury.[47]

---

[40] *Id.* at A57.

[41] *Id.* at A64.

[42] *Id.* at A57.

[43] *Id.*

[44] State's Answering Br. at 9.

[45] App. to Opening Br. at A72.

[46] *Id.* at A74.

[47] *Id.*  The judge told defense counsel that the court was willing to entertain a question about the resolution of the *Whittle* matter if it did not mislead the jury.  *Id.*

(12) The case was submitted to the jury later that day.[48] The jury convicted Hazelett on all counts.[49] On March 15, 2024, Hazelett was sentenced to three-and-a-half years of incarceration, suspended for probation and a fine.[50]

(13) On appeal, Hazelett contends that the trial court violated her constitutional right to present a complete defense and cross-examine her accusers by "severely restrict[ing]" her right to impeach Corporal Moses.[51] Hazelett argues that the trial court's rulings regarding her counsel's cross-examination of Corporal Moses constituted error in a number of ways, including by (i) improperly suggesting that a defendant must notify the State of an impeachment strategy; (ii) incorrectly interpreting what occurred in *Whittle* and therefore precluding Hazelett from inquiring into the dismissal; and (iii) limiting Hazelett's ability to challenge the truthfulness of Corporal Moses's testimony about the turn-signal violation.[52] The State responds that the court correctly exercised its discretion to place reasonable limitations on cross-examination.[53]

---

[48] *Id.* at A4.

[49] *Id.* at A4.

[50] *Id.* Ex. B (Sentence Order).

[51] Appellant's Opening Br. at 9.

[52] *See id.* at i–ii.

[53] *See* State's Answering Br. at 11.

## II.    STANDARD OF REVIEW

(14)    This court reviews constitutional limits on cross-examination *de novo*.[54]

Non-constitutional restrictions are reviewed for abuse of discretion.[55]

## III.    ANALYSIS

### A. The trial court's ruling did not violate Hazelett's constitutional rights.

(15)    The United States Constitution "guarantees criminal defendants 'a meaningful opportunity to present a complete defense'"[56]    Although "cross-examination is the 'principal means by which the believability of a witness and the truth of his testimony are tested,'"[57] "the right of cross-examination is not without limits."[58]  "Trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[59]

---

[54] *Wilson v. State*, 950 A.2d 634, 638 (Del. 2008) (reviewing, *de novo*, claim that evidentiary ruling unconstitutionally restricted right to effectively cross-examine).

[55] *Garden v. Sutton*, 683 A.2d 1041, 1043 (Del. 1996) (addressing cross-examination of police officer in civil suit, without constitutional implications).

[56] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

[57] *Snowden v. State*, 672 A.2d 1017, 1024 (Del. 1996) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).

[58] *Id.*

[59] *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

(16)   In *Snowden v. State*, we identified several factors that should guide a trial court when it is asked to limit the scope of cross-examination: "(1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence to the question at bar; (3) the danger of unfair prejudice, confusion of the issues and undue delay; and (4) whether the evidence is cumulative."[60]

(17)   Here, the trial court applied each of the four *Snowden* factors.  As to the first factor, the court determined that although Corporal Moses was the chief investigating officer, his testimony was not as crucial as it might otherwise have been because of the other officers' consistent testimony and the body-worn camera footage.[61]   The court explained that the only evidence to which Corporal Moses testified that was not captured on body-worn camera was his initial observation of the Volkswagen Passat and the turn-signal violation.[62]  Corporal Moses's testimony as to those events, however, was corroborated by Officer Rosaio, making impeachment of Corporal Moses somewhat less critical.[63]

(18)   As to the second *Snowden* factor, the trial court similarly determined that the specific impeachment evidence was logically relevant only to the portions

---

[60] *Id.* at 1025.

[61] *See* App. to Opening Br. at A55.

[62] *Id.*

[63] *Id.*

11

of Officer Moses's testimony that were not captured on body-worn camera.[64] Concerning factor three, the court held that, due to the risk of confusion, "some brief and limited cross-examination" on the *Whittle* matter should be permitted, but "the defense [was] not allowed to give the impression that there was any sort of finding of dishonesty" in the *Whittle* case.[65] Finally, regarding factor four, the court ruled that the evidence was "certainly not cumulative here because it is the first of its kind that will be potentially introduced."[66] Applying those factors, the trial court permitted Hazelett's counsel to inquire into the areas that counsel indicated she intended to explore during cross-examination, other than the dismissal of the *Whittle* case.

(19) Hazelett argues that the trial court erred because it failed to address two additional factors discussed in *Snowden*: "'(1) if the jury was exposed to facts sufficient for it to draw inferences as to the reliability of the witness and (2) if defense counsel had an adequate record from which to argue . . . .'"[67] Hazelett misreads *Snowden*; these two factors are what an *appellate court* considers in

---

[64] *Id.* at A56.

[65] *Id.* at A57.

[66] *Id.* at A55.

[67] Appellant's Opening Br. at 21–22 (quoting *Smith v. State*, 913 A.2d 1197, 1233 (Del. 2006)).

12

determining whether a trial court's restrictions on cross-examination violated the defendant's constitutional right to confront witnesses.[68]

(20) Those two factors confirm that Hazelett's constitutional rights were not violated by the restrictions placed on Corporal Moses's cross-examination. First, the jury was exposed to sufficient facts to draw inferences regarding Corporal Moses's reliability as a witness. Hazelett's counsel identified her proposed line of questioning,[69] was able to ask Corporal Moses each of the questions that she proposed without objection or restriction,[70] and elicited the relevant information from Corporal Moses. Counsel asked questions related to the importance of telling the truth in both sworn documents and testimony, as well as Corporal Moses's specific acts and contradictory testimony in the *Whittle* case.[71] "To properly evaluate

---

[68] *Smith*, 913 A.2d at 1233 (quoting *Snowden*, 672 A.2d at 1025) ("'When the cross-examination relates to impeachment evidence, the test for determining if the trial judge's limitation on cross-examination violated the defendant's confrontation right is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness. . . . More specifically, we look to the cross-examination permitted to ascertain (1) if the jury was exposed to facts sufficient for it to draw inferences as to the reliability of the witness and (2) if defense counsel had an adequate record from which to argue why the witness might have been biased . . . .'").

[69] "My intent is to ask about what he swore in the affidavit, I plan on using his own language, what he testified to in the preliminary hearing, using his own language, and what he testified to at the trial, in his own language, and leave it at that. Obviously, I will be asking him questions about the importance of telling the truth and the fact that he did swear to tell the truth in all of those proceedings. But I'm not planning on getting deep into the facts of each of the cases, or that case specifically. I don't think delving too deeply into the facts is relevant." App. to Opening Br. at A55.

[70] *See id.* at A71–72.

[71] *Id.*

13

a witness, a jury must have sufficient information to make discriminating appraisal of a witness's motives and bias."[72] Hazelett's jury received that evidence.

(21) Moreover, defense counsel had an adequate record from which to argue bias. Counsel had all Corporal Moses's inconsistent statements, including transcripts of *Whittle* and *Mobley*, as well as his testimony in this trial. The only restriction placed on cross-examination was inquiry into the outcome of the *Whittle* trial. The court properly restricted this line of questioning because *Whittle* was dismissed for insufficient evidence, and any other explanation would have been confusing and potentially devolved into a trial-within-a-trial. The trial court did not preclude Hazelett's defense counsel from urging the inference that Corporal Moses was dishonest or misleading in prior testimony—it simply held that Hazelett could not argue that there was a previous finding of dishonesty or that the *Whittle* case was dismissed because Corporal Moses was dishonest.[73]

### B. The trial court did not err in precluding Hazelett from arguing that the traffic stop was illegal.

(22) Hazelett contends that she was entitled to challenge the credibility of Corporal Moses's testimony regarding the alleged turn-signal violation and that the trial court improperly restricted her from doing so.[74] The trial court noted that the

---

[72] *Douglas v. Owens*, 50 F.3d 1226, 1230 (3d Cir. 1995) (citing *United States v. Abel*, 469 U.S. 45, 52 (1984)).

[73] App. to Opening Br. at A57.

[74] Appellant's Opening Br. at 20.

initial traffic stop was not captured on body-worn camera, and impeachment testimony related to *Whittle* would be particularly relevant to this portion of Corporal Moses's testimony.[75]

(23) Regarding the turn-signal violation, the court stated:

> I see your point, [State], about the turn -- it is not exactly arguing a motion to suppress, because that too is not allowed, there will be no tolerance for any argument that the stop should not have been made, because this is not a motion to suppress, but there is a turn signal violation that is before the jury and that is [for] their consideration.[76]

Although the court's ruling could have been clearer in hindsight, counsel could reasonably understand that Hazelett could not challenge the justification for the stop—akin to a motion to suppress—but could argue that the State had not met its burden to prove the elements of the turn-signal violation beyond a reasonable doubt.

(24) The court later clarified:

> Well, I asked [defense counsel] at the . . . beginning of one of our discussions this afternoon . . . what she was planning to explore on this line of questioning, and . . . she answered very limited. And so . . . obviously there can't be any argument that it was an improper illegal stop. But . . . it's a turn signal violation here, and it was testified to that that was the basis of the stop . . . whatever inferences can be appropriately argued, I expect that all parties will stay within that.[77]

---

[75] App. to Opening Br. at A57.

[76] *Id.*

[77] *Id.* at A64.

15

To the extent that Hazelett's counsel was unsure whether this ruling permitted or barred certain questions, Hazelett did not seek clarification. Counsel did not identify for the trial court—and has not identified on appeal—what additional questions regarding Corporal Moses's credibility that Hazelett should have been permitted to ask to challenge the turn-signal evidence. The trial court correctly held that Hazelett could not argue that the stop was illegal, and it was incumbent on counsel to clarify any confusion she had regarding the parameters of the court's ruling. In the context of a fast-moving trial, the trial judge can reasonably expect that trial counsel will speak up if they do not understand an evidentiary ruling.

### C. Any error in the trial court's rulings was harmless.

(25)  Finally, Hazelett urges that the trial court erred in stating or implying that defense counsel ambushed the State by not apprising it of Hazelett's intent to raise the *Whittle* matter in impeachment.[78] The State concedes that the trial court erred when it suggested that defense counsel was obligated to turn over impeachment material before cross-examination.[79] Any implication that defense counsel engaged

---

[78] Appellant's Opening Br. at 16–19.

[79] State's Answering Br. at 17.

in trial by ambush[80] was not consistent with our discovery rules.[81]  There was, however, no "chilling effect" caused by the trial court's ruling.[82]

(26)  When reviewing claims of harmless error, this Court "'considers the probability that an error affected the jury's decision.  To do this, [we] must study the record to ascertain the probable impact of error in the context of the entire trial.'"[83] In Hazelett's trial, the court's error regarding defense counsel's obligation to disclose impeachment evidence did not affect the jury's verdict.  As discussed above, defense counsel created a record from which she could argue that the jury should not believe Corporal Moses.  Moreover, Corporal Moses's testimony was corroborated by Officer Rosaio, Officer Schulz, and body-worn camera footage.

(27)  For the foregoing reasons, the trial court did not violate Hazelett's constitutional right to present a complete defense and cross-examine her accusers—

---

[80] App. to Opening Br. at A58.

[81] *See* Del. Super. Ct. Crim. R. 16; *see e.g. United States v. Robertson*, 2020 WL 6786186, at *3 (D.N.M. Nov. 18, 2020) ("discovery obligations are not symmetrical. The government must turn over any requested documents . . . it 'intends to use . . . in its case-in-chief at trial' or if the item is 'material to preparing the defense.' The defense, by contrast, must only turn over documents . . . it 'intends to use . . . in the defendant's case-in-chief at trial.'"); *United States v. Medearis*, 380 F.3d 1049, 1057 (8th Cir. 2004) ("reciprocal pre-trial disclosure . . . includes only documents [] the defendant intends to introduce during his own case-in-chief"); *United States v. Moore*, 208 F.3d 577, 579 (7th Cir. 2000) (holding document used only for impeachment is not excludable under Rule 16); *United States v. Gray-Burriss*, 791 F.3d 50, 57 (D.C. Cir. 2015) (same).

[82] *See* Appellant's Reply Br. at 3–4 (citing *People v. Carter*, 86 A.D.2d 451, 457–58 (N.Y. 1982); *State v. Foster*, 1990 WL 174008 at *5 (Ohio Ct. App. Nov. 6, 1990)).  The cases Hazelett cites are not analogous to what occurred in this case. Unlike the cited cases, there was no suggestion by trial court here that defense counsel was acting unethically or could be disciplined.

[83] *Harris v. State*, 113 A.3d 1067, 1078 (Del. 2015) (quoting *Hansley v. State*, 104 A.3d 833, 837 (Del. 2014)).

it properly applied the four-factor *Snowden* test to limit the scope of impeachment. Furthermore, the trial court did not err in precluding Hazelett from arguing that the initial traffic stop was illegal. Any error in the trial court's ruling that defense counsel was obligated to turn over impeachment material before cross-examination was harmless and did not affect the jury's verdict.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice